[S. F. No. 10737. In Bank.—August 25, 1923.]

EAST BAY MUNICIPAL UTILITY DISTRICT (a Public Corporation), Petitioner, v. E. F. GARRISON, Auditor, etc., et al., Respondents.

[1] STATUTORY CONSTRUCTION—STATUTES—MANDATORY AND DIRECTORY PROVISIONS.—Whether the terms of a statute which provides that a particular act shall be done within or at or before a specified time are to be construed as mandatory or merely directory, in the absence of an express provision of law declaring them to be one or the other, must be determined from the terms of the statute construed as a whole, from the nature and character of the act to be done, and from the consequences which would follow the doing or failure to do the particular act at the required time.

[2] MUNICIPAL UTILITY DISTRICT ACT — TAXATION — STATUTORY CONSTRUCTION.—Subdivisions 1, 2, 3, and 4 of section 20 of the Municipal Utility District Act, approved May 23, 1921, touching the subject of taxation come within the category of laws which are *in invitum* in their imposition of the burdens of taxation and hence are to be strictly construed; and so interpreted the provisions of

such act, whether they are regarded as a whole or whether the particular portion thereof embraced in said section 20 thereof is to be considered as a tax measure, are not to be construed as retroactive in their application in the absence of language in the statute expressly making them so.

[3] Id.—Taxes—Assessments—Time of Election—Construction.— The provisions of subdivision 2 of section 20 of the Municipal Utility District Act empowering the board of directors of the district to create by ordinance its own complete system for the assessment, levy, and collection of district taxes, and the provisions of subdivision 3 of said section 20 of said act permitting the board of directors by ordinance to elect to avail itself of the assessment or assessments made by the assessor or assessors of the county or counties in which the district is situated and to take such assessment or assessments as the basis for district valuation, "provided, that the board of directors shall declare its said election by ordinance and file a certified copy of the same with the auditor or auditors of the county or counties in which the district is situated, on or before the first Monday in February of each year," and "thereafter all assessments shall be made and taxes collected by the county assessor and tax collector, or county assessors and tax collectors, of the county or counties in · which the district is situated," cannot be interpreted to be merely directory as to the matter of fixing the first Monday in February as the date on ·or prior to which the board of directors of the district should exercise its election.

[4] Id.—Taxation—Legislature—Mandatory Provision as to Time of Election.—The legislature must be held to have had the several provisions of the Political Code, fixing a date not later than the first Monday in March of each year when the activities of the county officials in the matter of the assessment, levy, and collection of taxes begin, in mind in the formulation of the Municipal Utility District Act and in the fixation of the particular date named therein when the ordinance of the board of directors of the district to be formed under said act should be adopted and a certified copy thereof filed with the county officials specified therein; and the adoption of said ordinance on or before said date and the filing of a certified copy thereof with each of said officials was to be a mandatory duty cast upon the governing body of said district in order to the exercise of the election provided for in subdivision 3 of section 20 of said act.

[5] Id.—Assessment—Time of Election—Subsequent Organization of District—Act not Retroactive.—Where a municipal utility district is organized more than three months after the first Monday in February in a particular year, upon or before which date the board of directors of a municipal utility district is required, under section 20 of the Municipal Utility District Act, to exercise

its election as to how and by whom its taxes are to be assessed, an election made by the board of directors of the subsequently organized district cannot be given effect, since to do so would be to render the provisions of the act retroactive in their operation as to districts not in being at the time when the particular election provided by its terms is to be made.

[6] STATUTORY CONSTRUCTION—RETROACTIVE LEGISLATION—INTENT.—An act will not be construed to be retroactive in the absence of either an express declaration to that effect or a very clear implication that such was the intent of the legislature.

[7] TAXATION—LIENS—DUE PROCESS.—In order for the lien of taxes to be legally imposed upon property as of the first Monday in March of any particular year it is essential to the fixation of such tax lien upon such property as of said date not only that the property itself should be in existence at the time of the attachment of such lien but also that there should be at such time an existing obligation to pay the particular tax which the lien thus imposed is to secure; otherwise the lien would have no foundation upon which to rest and would, by the imposition of an encumbrance having no obligation to support it, amount to the taking to the extent of such encumbrance of the property of the citizen without due process of law.

[8] MUNICIPAL UTILITY DISTRICT ACT—ORGANIZATION OF DISTRICT AFTER FIRST MONDAY IN MARCH—NONATTACHMENT OF LIEN.—Property in existence on the first Monday in March in a particular year and situated within a municipal utility district, organized after said first Monday in March, is not subject to taxes nor liens therefor attempted to be imposed by such district as of said date, for the reason that such district had not yet been formed, did not exist, and not having been called into being could not create an obligation which would support a tax lien attaching as of said prior date.

PROCEEDING in Mandamus to compel the Auditor, Assessor and Tax Collector of Alameda County to compute, assess, and collect municipal utility district taxes. Writ denied.

The facts are stated in the opinion of the court.

Wm. J. Locke and Louis Bartlett for Petitioner.

Ezra W. Decoto, District Attorney, Earl Warren, Chief Deputy District Attorney, and Ralph E. Hoyt, Deputy District Attorney, for Respondents.

RICHARDS, J., *pro tem.*—This is a proceeding wherein the petitioner applies for a writ of mandate directed to the respondent herein, who are, respectively, the auditor, the assessor, and the tax collector of the county of Alameda, requiring the said E. F. Garrison, as said county auditor, to compute and enter in the assessment book or books of said county, to be prepared by him in accordance with the laws governing the making and collection of property assessments and taxes for such county, and in a separate column in said assessment book or books, to be headed Utility District Tax—Municipal Utility District [naming it], the sum or sums to be paid as a district tax on the property within the East Bay Municipal Utility District, the petitioner herein, and requiring the said Louis J. Kennedy, as the county assessor of said county, to assess and levy, and the said Edward T. Planer, as the county tax collector thereof, to collect said district tax for the use and benefit of said East Bay Municipal Utility District in accordance with law and the provisions of an act of the legislature providing for the creation and maintenance of municipal districts for supplying water and other commodities within such districts, known as the "Municipal Utility District Act," approved May 26, 1921. (Stats. 1921, p. 245.)

The petitioner alleges that it was duly organized as a public corporation under and in pursuance of the terms of said act of the legislature on the twenty-second day of May, 1923, and that said district embraced within its territory certain lands and the inhabitants thereof within the counties of Alameda and Contra Costa; that thereafter and on the thirty-first day of May, 1923, the petitioner duly adopted an ordinance entitled "An Ordinance of the Board of Directors of the East Bay Municipal Utility District Whereby said Board Elects to Avail Itself of the Assessments made by the Assessors of Alameda and Contra Costa Counties," and reading as follows:

"Section 1. The Board of Directors of the East Bay Municipal Utility District hereby elects to avail itself of the assessments made by the assessors of Alameda and Contra Costa Counties respectively for the territory within said counties embraced within said district, and elects to take such assessments as the basis for district taxation, in

accordance with the provisions of the act of the legislature entitled 'An Act to provide for the organization, incorporation, and government of municipal utility districts, authorizing such districts to incur bonded indebtedness for the acquisition and construction of works and property and to levy and collect taxes to pay the principal and interest thereon.' ''   (Approved May 26, 1921.)

The petitioner further alleges that pursuant to the provisions of subdivision 3 of section 20 of said Municipal Utilities Act, the board of directors of said district filed a certified copy of said ordinance with each of the respondents herein; that each of said respondents, notwithstanding the presentation and filing of the respective copies of said ordinance, have refused to comply with the provisions of said act and to compute, assess, and collect the taxes for said district as is in said act provided. Wherefore, the petitioner prays for the issuance of a writ of mandate compelling the said officials respectively so to do.

The respondents demur to said petition as failing to state sufficient grounds for the issuance of said writ. In support of their said demurrer respondents assert and show that the power and authority of the board of directors of the petitioner herein to pass and adopt the ordinance above set forth and by so doing to entitle the said petitioner as a Municipal Utility District to require the respondents herein, as the auditor, assessor, and tax collector, respectively, of the county of Alameda, to compute, assess, levy, and collect the taxes for the uses of said district for the fiscal year 1923–24, is to be found in that portion of subdivision 3 of section 20 of said ''Municipal Utilities Act,'' which reads as follows:

''(3) The board of directors may elect to avail itself of the assessment or assessments made by the assessor or assessors of the county or counties in which the district is situated, and may take such assessment or assessments as the basis for district taxation; provided, that the board of directors shall declare its said election by ordinance and file a certified copy of the same with the auditor or auditors of the county or counties in which the district is situated, on or before the first Monday in February of each year. Thereafter all assessments shall be made and taxes collected by the county assessor and tax collector, or county assessors

and tax collectors, of the county or counties in which the district is situated until the board of directors of the district by ordinance elects otherwise.''

The respondents insist that since the application of the petitioner herein affirmatively shows that the ordinance upon which the petitioner relies for its authority to compel and seeks the compulsion of the respondents to do the acts and things required under the provisions of said enactment was not adopted by said board of directors ''on or before the first Monday in February'' of the year 1923, nor, in fact, before the thirty-first day of May, 1923, and that a copy of said ordinance was not presented to or filed with the respondents herein before the fourteenth day of June, 1923, and that having thus failed to comply with the express provision of said act with respect to the time on or prior to which such ordinance should have been adopted by said district and a certified copy filed with said respondents, it is not entitled to impose upon the latter as county officials of the county of Alameda the added duties provided for in said enactment.

The respondents further insist that since the petition herein affirmatively shows that the petitioner was not organized as a public municipal utility district prior to May 23, 1923, and had no existence prior to that time, it could not legally impress a lien for taxes for the use of such district upon the property within it which should take effect as of the first Monday of March, 1923, so as to impose a lien as of that date upon said property, and hence could not require the respondents herein to compute, assess, levy, and collect taxes upon the property within said district for the enforcement of said lien.

The answer which the petitioner makes to the first objection above set forth is that the provisions of said Municipal Utilities Act with regard to the time within which the board of directors of a corporation organized and functioning under said enactment should take action in the adoption and filing of said ordinance electing to avail itself of the general laws governing the levy and collection of taxes and of the services of the county officials in charge of the administration thereof, are not mandatory, but directory in character, and hence that the failure of the board of directors of the petitioner to exercise the election provided for in

said enactment through the passage of the ordinance in question on or prior to the first Monday in February of the current year was not fatal and that the adoption of said ordinance on the later date constituted a substantial compliance with the requirements of said enactment by which these respondents are bound.

[1] Whether the terms of a statute which provides that a particular act shall be done within or at or before a specified time are to be construed as mandatory or merely directory, in the absence of an express provision of law declaring them to be one or the other, must be determined from the terms of the statute construed as a whole, from the nature and character of the act to be done, and from the consequences which would follow the doing or failure to do the particular act at the required time. The act of the legislature approved May 23, 1921, and known as the "Municipal Utility District Act," is an act to provide for the organization, incorporation, and government of municipal utility districts for the purpose of acquiring, constructing, owning, operating, controlling, and using, within or without, or partly within and partly without, the designated district, works for the purpose of supplying the inhabitants and municipalities of said district with light, water, power, heat, transportation, telephone service, or other means of communication, or works for the disposition of garbage, sewage, or refuse matter, with power to do all of the things necessary or convenient for the full exercise of the powers granted to districts organized within such territory; such districts are given the right of eminent domain and are empowered to construct works across or along streets and highways and over lands which now are or may become the property of the state, including the right to construct works upon or across any stream or watercourse, and in the exercise of these rights shall have the same rights and privileges which have been or may be granted to municipalities within this state. A district thus formed and functioning are expressly given the right to levy and collect, or cause to be levied and collected, taxes for the purpose of carrying on its operations and paying the obligations of the district.

Section 20 of said act deals specifically with the matter of taxation. By subdivision 1 thereof it is provided that "If

from any cause the revenues of the district shall be inadequate to pay the principal or interest on any bonded debt as it becomes due, the board of directors must, or if funds are needed to carry out the objects and purposes of the district which cannot be provided for out of the revenues of the district, then the board of directors may, levy a tax for such purposes as herein provided. The board shall state the purposes for which such taxes are necessary, and must fix, by resolution, the amount of money necessary to be so raised by taxation.''

Subdivision 2 of said act provides that ''The board of directors may by ordinance provide the mode and manner of assessing, and of correcting and equalizing assessments upon, the taxable property situated within the district, for the purpose of levying district taxes, and of levying and collecting such taxes, and may provide for the collection of delinquent taxes by actions or legal proceedings which are hereby authorized to be brought, prosecuted and maintained in the name of the district against the several owners of property from whom such taxes may be due and delinquent, for the purpose of recovering the amount of the delinquent tax, with penalties, interest, and costs: *provided,* that the provisions of such ordinance shall be conformable to general law.''

Subdivision 3 of said act provides in part that ''The board of directors may elect to avail itself of the assessment or assessments made by the assessor or assessors of the county or counties in which the district is situated, and may take such assessment or assessments as the basis for district taxation, *provided,* that the board of directors shall declare its said election by ordinance and file a certified copy of the same with the auditor or auditors of the county or counties in which the district is situated, on or before the first Monday in February of each year. Thereafter all assessments shall be made and taxes collected by the county assessor and tax collector, or county assessors and tax collectors, of the county or counties in which the district is situated until the board of directors of the district by ordinance elect otherwise.''

By subdivision 4 of said section 20 of said act it is provided that ''All taxes levied under the provisions of this act shall be a lien on the property on which they are levied;

and the enforcement of the collection of such taxes shall be had in the same manner and by the same means as is provided by law for the enforcement of liens for state and county taxes, all the provisions of law relating to the enforcement of the latter being hereby made a part of this act, so far as applicable.''

From this statement of the provisions of said act germane to the question before us, it is manifest that it is an act most comprehensive in its application to districts to be formed thereunder regardless of pre-existing political subdivisions, county, district, or municipal, and susceptible of embracing populous communities already organized in political subdivisions and already subjected to their own burdens by way of taxation imposed under state, county, municipal, and charter laws, ordinances, and regulations. **[2]** The particular provisions of the act above set forth touching the subject of taxation come clearly within the category of laws which are *in invitum* in their imposition of the burdens of taxation and hence are to be strictly construed. (*McDougald* v. *Boyd,* 172 Cal. 753 [159 Pac. 168]; *Mulville* v. *City of San Diego,* 183 Cal. 734 [192 Pac. 702]; *Weyse* v. *Crawford,* 85 Cal. 196 [24 Pac. 735].)

So interpreted the provisions of this act, whether they are regarded as a whole or whether the particular portion thereof embraced in section 20 thereof is to be considered as a tax measure, are not to be construed as retroactive in their application in the absence of language in the statute expressly making them so. When the particular provisions of section 20 of the act are considered it will appear that they purport to provide an alternative method for the imposition and levy of the taxes which are to be imposed upon property within the limits of said district and for its use and benefits in carrying into effect the purposes of its creation. By subdivision 1 of said section the board of directors is fully empowered to levy and collect taxes for such purposes; by subdivision 2 of said section the board of directors of the district is fully empowered to create by ordinance its own complete system for the assessment, levy, and collection of such taxes, its only limitation in that regard being the requirement that the provisions of such ordinance shall be conformable to general law; by subdivision 3 of said section the board of directors is empowered by

ordinance to elect to avail itself of the assessment or assessments made by the assessor or assessors of the county or counties in which the district is situated and may take such assessment or assessments as the basis for district taxation. This substitute method for the computation, assessment, levy, and collection of district taxes is made subject to the proviso that the election which the board of directors are thus permitted to make must be exercised through an ordinance duly adopted and duly filed with the respective county officials of the county or counties in which such district is situated, on or before the first Monday in February of each year. Reading these two subdivisions of section 20 of said act together it would seem to have been the apparent purpose of the lawmakers to fix upon a date early enough in each year to enable the district itself to organize its own complete equipment for the assessment, levy, and collection of such taxes as its board of directors should find it necessary or expedient to impose; or, in the event of the exercise of said election, to enable the county officials upon whom the burden of computing, levying, and collecting such taxes was to be laid to provide the necessary equipment for the doing of the additional work which the exercise of such election cast upon them. [3] To interpret these provisions of said section fixing the first Monday in February as the date on or prior to which the board of directors of the district should exercise this election to be merely directory would be altogether unreasonable as leaving both the officers of the district who might be charged with the assessment, levy, and collection of those taxes in the event such election was not exercised and the county officials who would be charged with the like duty in the event of its exercise in a state of uncertainty as to which body of officials should undertake the task, until such a time, owing to the failure of the board of directors to pass the ordinance of election as would be likely to imperil or render difficult, if not impossible, the legal performance of the precise, detailed, and delicate duty of computing, assessing, levying, and collecting the taxes of the district for any current year.

These views of the interpretation to be given the particular provisions of the statute are further enforced by an examination of the provisions of the general laws relating to

the assessment and taxation of property. Section 3718 of the Political Code provides that the lien of taxes upon real property and the improvements thereon to be assessed, levied, and collected for each year attaches to said property as of the first Monday of March in each year. Section 3629 of the Political Code (see sec. 8, art. XIII, Const.) provides that the assessor must exact from each taxpayer a statement under oath setting forth specifically the real and personal property owned by such person at 12 o'clock noon of the first Monday in March of each year. Between these dates and the first Monday in July of that year the assessor must prepare his assessment-books embracing the detailed matters required by the provisions of section 3650 of the Political Code and he must complete his said assessment-books on or before the last-named date and deliver the same to the clerk of the board of supervisors of the county, and for his failure so to do he is subject to the penalties provided for in section 3656 of the said code. He must also on or before the third Monday of July of each year furnish to such incorporated cities, towns, lighting, water, and irrigation districts within his county *as shall have made written request for the same on or before the first Monday of March of each year,* certified copies of his said assessment-books in so far as the same pertains to property within the limits of these several bodies so requiring the same. It will thus be seen that the statutes relating to taxation fix upon a date not later than the first Monday in March of each year when the activities of these several county officials in the matter of the assessment, levy, and collection of taxes begin. [4] The legislature must be held to have had these several provisions of the Political Code in mind in the formulation of the particular act under review and in the fixation of the particular date named therein when the ordinance of the board of directors of the district to be formed under said act should be adopted and a certified copy thereof filed with the county officials specified therein; and that the adoption of said ordinance on or before said date and the filing of a certified copy thereof with each of said officials was to be a mandatory duty cast upon the governing body of said district in order to the exercise of the election provided for in subdivision 3 of section 20 of said act.

The applicant herein relies strongly upon the case of *Cake* v. *City of Los Angeles,* 164 Cal. 705 [130 Pac. 723], as upholding their contention that the provisions of said act are to be deemed directory. There can be no doubt that said decision correctly states the law as to the particular situation presented in that case but the cases are in nowise similar. The act to be done in that case related to the preparation of an amended assessment under the Street Opening Act of 1903 (Stats. 1903, p. 380, sec. 16), as amended in 1909 (Stats. 1909, p. 1040), and the statute contained the general direction that such amended assessment should be made by the street superintendent within sixty days after the council had ordered the same to be made with a proviso that the council might extend said time for a period not exceeding ninety days additional; and this court in construing these provisions of said act held that in view of the fact that there were no negative words denying the power to return the new assessment after the indicated time and no undue advantage would be gained by the county or the contractor and no benefit either to the public or any individual impaired or lost, the said provision in said statute must be held to be merely a directory provision. A very different situation is, as we have just seen, presented by the requirements of the act under review in this proceeding when read in the light of the particular duties imposed upon county officials with respect to the levy and collection of taxes under the provisions of the Political Code above set forth.

The foregoing views as to the proper interpretation of the meaning of these provisions of the act in question are further enforced by a consideration of the main objection which the respondents herein urge against the issuance of the writ of mandate sought by this proceeding. The record shows that the petitioner herein was not in existence as a political or corporate entity on the first Monday in March of the present year and was not, in fact, created or organized as a municipal utility district under the provisions of said act until on or about the twenty-first day of May, 1923. The date upon or before which it was required under section 20 of said act to exercise its election as to how and by whom its taxes for the fiscal year 1923–24 were to be assessed, levied, and collected had expired more than three

months before it came into being.  **[5]**  To give to the act
the interpretation which the petitioner claims for it in this
proceeding would be to render the provisions thereof retro-
active in their operation as to districts not in being at the
time when the particular election provided by its terms was
to be made.  **[6]**  There is nothing in the act itself to indi-
cate that it was intended to have any such retroactive effect,
and it is a well-settled principle of statutory construction
that an act will not be construed to be retroactive in the
absence of either an express declaration to that effect or a
very clear implication that such was the intent of the legis-
lature.  (*Willcox* v. *Edwards,* 162 Cal. 455 [Ann. Cas.
1913C, 1392, 123 Pac. 276]; *Vanderbilt* v. *All Persons,* 163
Cal. 507 [126 Pac. 158]; *Estate of Richmond,* 9 Cal. App.
402 [99 Pac. 554]; *State Commissioner etc.* v. *Welch,* 20
Cal. App. 624 [129 Pac. 974].)

But the respondents urge an even more serious objection
to the giving to this act the retroactive aspect which the
petitioner is seeking to impose upon it.  Under section 3718
of the Political Code the lien of property taxes to be im-
posed under general laws attaches to the property to be
affected thereby upon the first Monday in March of each
year.  The act under review provides in subdivision 4
of section 20 thereof that all taxes levied under the provi-
sions of this act shall be a lien upon the property upon
which they are levied and that the provisions of the general
law relating to the enforcement of such liens are made a
part of said act.  The duty imposed by the general laws
relative to taxation upon those county officials who are
the respondents herein is to compute, list, assess, levy, and
collect such property taxes as by virtue of said section 3718
of the Political Code become a lien upon real property and
the improvements thereon upon the first Monday in March
of the current year.  A lien, according to its general defini-
tion is a charge imposed upon property as security for the
performance of an act or obligation.  (Civ. Code, secs. 2872–
2875, incl.)  The lien of taxes differs in no respect from
other liens in that it must rest upon an obligation to do the
particular act which its attachment to the property of the
obligee, or another, secures.  **[7]**  In order, therefore, for
the lien of taxes to be legally imposed upon property as of
the first Monday in March of any particular year it is essen-

tial to the fixation of such tax lien upon such property as of said date not only that the property itself should be in existence at the time of the attachment of such lien but also that there should be at such time an existing obligation to pay the particular tax which the lien thus imposed is to secure. Otherwise the lien would have no foundation upon which to rest and would, by the imposition of an encumbrance having no obligation to support it, amount to the taking to the extent of such encumbrance of the property of the citizen without due process of law. **[8]** On the first Monday in March, 1923, the property lying within the region which now forms the East Bay Municipal Utility District was in existence and was the subject of ownership on the part of persons who were on that date legally liable to pay the taxes upon their respective holdings which were then imposable under existing laws; and for such obligation the lien of taxes as of that date legally attached to such property, but as to any taxes for the maintenance or expenditures of the East Bay Municipal Utility District there could on said date be no such tax nor any lien to secure its future collection, for the reason that such district had not yet been formed, did not exist, and not having been called into being could not create an obligation which would support a tax lien attaching as of said prior date.

We can perceive no distinction in principle between the nonexistence of a law creating a tax at the date of the attempted attachment of the lien of such tax and the nonexistence of a municipal district capable of creating the obligation which is requisite to support such a lien as of said date. In the case of *Dodge* v. *Nevada Nat. Bank of San Francisco,* 109 Fed. 726 [48 C. C. A. 626], it was held that an act of the legislature of California which went into effect on March 14, 1899 (Stats 1899, p. 96), and which purported to render national bank stock taxable which had not theretofore been subject to taxation under existing state laws, was ineffectual to subject such property to the lien of taxes for that year. In so deciding the federal court construed the constitution and law of California relative to taxation and in so doing used this significant and persuasive language: "The entire system of taxation in the state of California plainly contemplates the existence of property liable to be assessed for taxes, and that its assessment, at

whatever date actually made, shall relate to some fixed period of time, and that the taxable status of the property is to be determined by its condition on that day. The Constitution and codes clearly designate the time when the assessable character of the property becomes fixed, to wit, 'at 12 o'clock, meridian, on the first Monday in March,' and the question here involved must be determined with reference to that date. The initial right of the assessor to assess any property during the assessing period relates to that day. The assessor is not authorized to assess any property that is exempt from taxation on that day. The owner or party in control of property is not required to include in his list, to be given to the assessor, any property not subject to taxation on the first Monday of March in each year. That is the time the lien on the property for the taxes attaches, regardless of the date when the assessment is made. The property assessed in this case was in existence on the first Monday in March. At that date there was no law in force which made it taxable.''

A similar question was presented to the supreme court of the United States in the case of *Wagoner* v. *Evans,* 170 U. S. 588 [42 L. Ed. 1154, 18 Sup. Ct. Rep. 730, see, also, Rose's U. S. Notes], which involved the validity of an attempted tax upon cattle kept or grazed in an unorganized county of the territory of Oklahoma and in holding the tax invalid the supreme court said: ''It is sufficient to say that, prior to the passage of the act of March 5, 1895, there existed no power in the authorities of Canadian County to tax property within the attached reservation. Such authority was first given by that act, and could only be validly exercised on property subjected to its terms after its enactment.''

So in the case at bar there was on the first Monday in March, 1923, no law which rendered the property within the region later to be organized into the East Bay Municipal Utility District subject to taxation for the use of such as yet nonexistent district and hence no lien which could attach to such property for such uses upon said date and, therefore, no duty imposed or imposable upon the respondents herein to set in motion the official machinery provided by general laws for the enforcement of a lien. We are constrained, therefore, to hold that the respondents herein as county officials of the county of Alameda were not bound

to conform to the requirements of the act in question by virtue of the election sought to be exercised by the board of directors of the petitioner herein pursuant to the provisions of subdivision 3 of section 20 of said act; and that a writ of mandate should not issue to compel said officials so to do.

We have not considered the practical difficulties in the application of the provisions of said act to the assessment of the property of the district for the current year which are discussed in the briefs of counsel, preferring to dispose of the case upon what appears to be the fundamental questions involved in its consideration.

The application is denied.

Lawlor, J., Waste, J., and Seawell, J., concurred.

WILBUR, C. J., Concurring.—I concur in the judgment for the reason that even if we assume that the date of the passing of the ordinance calling upon the county officers to make the assessment by the Utility District is directory, it is manifest, in view of the fact that our system of taxation is based on the accruing of a lien on the first Monday of March, that an ordinance after that date demanding the assessment of a tax in favor of a district not in existence on the first Monday of March was not intended by the statute.

I think it is unnecessary to determine whether or not the legislature would have power to provide that an assessment made after the district was created could relate back to a date before it was incorporated. Assuming that they had power to do so they have not, in fact, exercised that power.

Myers, J., concurred.

Rehearing denied.

All the Justices concurred.