[L. A. No. 9482.  In Bank.—June 20, 1927.]

## THE PEOPLE, Appellant, v. ALLIED ARCHITECTS ASSOCIATION OF LOS ANGELES (a Corporation), Respondent.

[1] ARCHITECTURE—PRACTICE OF—CORPORATIONS.—The principles that corporations cannot be formed for the purpose of practicing law, special licenses being required in all cases and the relation between attorney and client being that of trust and confidence, do not apply to the practice of architecture.

[2] ID.—ACT REGULATING PRACTICE OF ARCHITECTURE—CONSTRUCTION OF.—The law of this state regulating the practice of architecture, although providing for the issuance of certificates entitling architects to practice and declaring it unlawful for any person to practice without a certificate, allows any person to make plans for his own buildings, or furnish them to others, provided he informs the latter that he is not a certificated architect; and individuals may associate themselves together, as a matter of right, through the means of a corporation for the practice of architecture.

[3] ID.—SUIT TO PREVENT PRACTICE OF ARCHITECTURE — PLEADING — INSUFFICIENCY OF COMPLAINT.—In a proceeding in *quo warranto* to prevent a corporation from practicing architecture, from exercising any and all corporate rights and to restrain it from proceeding further with certain contracts for the performance of architectural services, the complaint fails to show that the acts of the defendant are unlawful where it alleges that defendant's articles of incorporation and by-laws do not require its members or employees to be certificated architects, but does not charge that they are not in fact certificated, or that if any of them are not certificated, defendant has failed to inform the one for whom the services are being performed of that fact.

[4] ID.—ENGAGING UNCERTIFICATED ARCHITECTS—PENALTY.—If a corporation in fact violates the law by engaging uncertificated persons to perform architectural services for which it has contracted without informing its patrons of that fact, it will be subject to penal prosecution for violation of the statute, and its contracts with its patrons will be void, but the law does not inflict upon it the loss of the right to further practice architecture as a penalty for such violation.

1. License regulation of architects, note, **Ann. Cas.** 1914B, 1224. "Person," in licensing statute, as including corporation, notes, 20 Ann. Cas. 741, 745; **Ann. Cas.** 1914A, 1309.  See, also, 17 **R. C. L.** 489; 3 Cal. Jur. 98.

[5] ID.—CORPORATION LAW—FILING ARTICLES OF INCORPORATION AND COPIES—AMENDMENT TO SECTION 296, CIVIL CODE.—A corporation which filed its articles of incorporation with the county clerk of the county in which its principal place of business was located and a certified copy in the office of the Secretary of State before the amendment of 1921 to section 296˙ of the Civil Code, was not required to thereafter file a copy certified ·by the Secretary of State in the place of its principal business, as said amendment is not applicable to corporations theretofore properly organized.

[6] ID.—STATUTORY CONSTRUCTION—RETROACTIVE LAW.—A retrospective law is one which operates upon matters which occurred, or rights and obligations which existed, before the time of enactment; and the established rule regarding such statutes is that no statute or constitutional provision shall be so construed as to give it a retroactive effect, to divest individuals of rights vested previous to its passage, or to affect pending litigation, unless such intent is expressly declared or necessarily implied in the language of the provision to be construed, and there is no such intent expressed in the amendment of 1921 to section 296 of the Civil Code.

(1) 5 C. J., p. 255, n. 5.   (2) 5 C. J., p. 255, n. 5.   (3) 32 Cyc., p. 1453, n. 9.   (4) 5 C. J., p. 255, n. 5.   (5) 14 C. J., p. 151, n. 79. (6) 36 Cyc., p. 1202, n. 90, p. 1207, n. 14, 15, p. 1215, n. 36.

APPEAL from a judgment of the Superior Court of Los Angeles County. Hartley Shaw, Judge. Affirmed.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, Leon French, Deputy Attorney-General, Asa Keyes, District Attorney, and Tracy Chatfield Becker, Deputy District Attorney, for Appellant.

Howard Robertson, Meserve, Mumper, Hughes & Robertson and Timon E. Owens for Respondent.

WASTE, C. J.—In this proceeding in *quo warranto,* in which the plaintiff seeks a judgment that the defendant be excluded from the practice of architecture in the state of California, and from the exercise of any and all corporate rights, privileges, and franchises therein, and also asks for

5.  See 6 Cal. Jur. 636.
6.  See 25 R. C. L. 786; 23 Cal. Jur. 628.

a temporary injunction to restrain the defendant from proceeding further with the performance of certain contracts which it has made with the county of Los Angeles for the performance of architectural services, the trial court denied the temporary injunction and sustained the demurrer of the defendant without leave to amend. From the judgment of dismissal thereupon entered the plaintiff has appealed, urging several grounds for a reversal of the action of the lower court. The two decisive questions, however, are whether or not the defendant corporation is entitled to practice architecture in this state and whether or not it has complied with the provisions of the Civil Code relating to the filing of its articles of incorporation in the office of the county clerk. All the contentions of the appellant revolve about these two points.

The act regulating the practice of architecture in this state (Stats. 1901, p. 641, amended Stats. 1903, p. 522) establishes a state board of architecture, and empowers the board to examine persons who desire to follow the profession of an architect, and to issue to them licenses for that purpose, and makes it a misdemeanor, punishable by a fine, for any person to practice architecture without such a certificate. It is provided, however, that nothing in the act shall prevent any person from furnishing plans or other data for buildings for other persons, provided the one furnishing such plans and data shall fully inform the other that he is not a certificated architect. In addition to the facts appearing from the complaint, to which the trial court necessarily confined its decision in ruling on the demurrer, other undisputed facts were established in opposition to the motion of plaintiff for a temporary restraining order. The defendant, Allied Architects Association of Los Angeles, is a corporation. Each of its thirty-three original incorporators was a duly certificated architect, licensed and entitled to practice the profession of architecture within the state of California. While, according to its by-laws, "any architect who, because of his ability and qualifications, has advanced the art and profession of architecture and thereby is fitted to render professional services for the public welfare, is eligible as a member of [the] association," at no time since the incorporation of the defendant has anyone been elected a member except and only he was a duly licensed architect under the laws of the state

of California, and entitled to practice the profession of architecture in this state. All the present members of the association are certificated architects. It further appeared, so far as the connection of the defendant with the work agreed to be performed for the county of Los Angeles was concerned, that such work, "in so far as the same already has been done, was done and performed by a licensed architect, duly licensed to practice the profession of architecture under and by virtue of the laws of the state of California, and all architectural work required or called for by said contracts to be done in the future will be done and performed for defendant and through it for said county by such a duly licensed architect; that the county of Los Angeles . . . will receive, in the doing of all architectural work called for by or done or to be done under said contracts, the services of trained, experienced and duly licensed architects, and none others."

When the cause was in the court below, Honorable Hartley Shaw handed down a written opinion which so ably and conclusively determines the principal questions here involved that we adopt it as the opinion of this court:

"The complaint alleges that the defendant was organized as a co-operative association under the provisions of section 653b, 653c and 653d of the Civil Code; that the purposes for which it was formed were, in general, the practice of architecture in connection with the erection of public buildings and the rendition of architectural services for its members, with other incidental powers; that neither its articles of incorporation nor its by-laws require that its members, officers or employees be certificated architects under the statute hereinafter referred to; and that defendant has been and now is engaged in the practice of architecture and in particular that it has made several contracts to perform architectural services for the county of Los Angeles, all of which have been completed but one. The uncompleted contract is for architectural services in connection with an acute hospital building for the county of Los Angeles, and it is against the further performance of this contract that a temporary injunction is sought.

[1] "Plaintiff relies upon *People* v. *Merchants Protective Corp.*, 189 Cal. 531 [209 Pac. 363], and other cases holding that a corporation cannot practice law and that if it under-

takes to do so *quo warranto* will lie against it.  In view of certain other decisions of the Supreme Court, I have come to the conclusion that the principles on which the cases relating to the practice of law were decided do not apply to the instant case.  Those principles, as stated in the case just cited, are: First, that individuals may not generally and as a matter of right associate themselves together for the practice of law, special licenses being required in all cases for the practice of law, and hence the provisions of section 286 of the Civil Code that corporations may be formed for any purpose for which individuals may lawfully associate themselves confers no right to form a corporation for the practice of law; and, second, that the essential element underlying the relation of attorney and client is that of trust and confidence of the highest degree, growing out of the employment and entering into the performance of every duty which the attorney owes the client in the course of his employment, and that the intervention of a corporation between the client whom it secures and the attorney whom it employs, even though the latter be duly licensed, prevents this relation of trust and confidence from arising.

"Taking up the second proposition first, it must be noted that the relation of attorney and client is, as the court says, a relation of trust and confidence of the highest degree.  An attorney may be and often is entrusted with his client's most intimate and vital secrets and details of his financial and business affairs, so that a violation by the attorney of his trust will in many cases result in financial ruin and perhaps shame and disgrace for the client.  Such a relation is *sui generis*.  If a corporation could enter into this relation it might be, as the court points out, that those in control of its affairs would be without character, learning or standing, and the standards of the profession would thereby be degraded, to the great injury of the state. . . .

[2] "The law in this state regulating the practice of architecture, after providing for the issuance of certificates entitling architects to practice, declares that it shall be unlawful for any person to practice architecture without a certificate, but adds to this a proviso that 'nothing in this act shall prevent any person from making plans for his own buildings, nor furnishing plans or other data for buildings for other persons, provided the person so furnishing such plans or

data shall fully inform the person for whom such plans or data are furnished that he, the person furnishing such plans, is not a certificated architect.' In *Ex parte McManus*, 151 Cal. 331 [90 Pac. 702], the Supreme Court held that this statute is valid against the objection that it discriminates between uncertificated architects. The court said: 'There is no class discrimination as to uncertificated architects, but, on the contrary, the act operates uniformly upon all that class. Any one of the class of uncertificated architects can practice his profession under the terms of the act—that is, prepare plans and other data for buildings—without rendering himself amenable to punishment, by informing his client or patron that he is not a certificated architect. . . . Neither do we perceive how, under the act, any special privileges or immunities are granted to any of the class of uncertificated architects which are not possessed by or extended to all. That entire class are accorded the privilege and right to practice architecture, provided they inform their patrons that they do not hold certificates, and they are granted immunity from punishment provided they do so.'

"Thus the act, as construed in this case, does not prevent a natural person from practicing architecture without a certificate, but merely requires him, if he has no certificate, to inform his patrons of that fact; or, to follow the language of the court in the case of *People* v. *Merchants Protective Corporation*, individuals may generally and as a matter of right associate themselves together for the practice of architecture, such right not being limited to those who have certificates; and hence the first proposition on which *People* v. *Merchants Protective Corporation* was decided is not applicable here and the defendant was lawfully formed to engage in the practice of architecture.

"In Binford v. Boyd, 178 Cal. 458 [174 Pac. 56], this statute again came before the Supreme Court in an action to recover the amount due to a corporation for plans and specifications prepared by it for the construction of a building for the defendants. These plans were prepared by the corporation in pursuance of a contract between it and the defendants to that effect, and were made by a duly certificated architect who was employed by the corporation for that purpose. The defense was that the contract was void as in contravention of the statute regulating the prac-

tice of architecture. The court held the contract lawful, however, saying: 'Prior to this statute there was no re-striction upon the right of any person to contract for or to furnish plans and specifications for another, or to follow the profession of architecture. All persons were at liberty to form corporations for any lawful purpose, and such corporations, when formed, had full capacity and power to make all contracts necessary or convenient for the carrying out of their lawful powers. . . . The terms of the act show clearly that it was directed only to individuals as distinct from corporations. It requires an examination of the person who applies for license, and its language shows that a license can be given only to human beings and not to artificial creations such as corporations. As a corpora-tion could not obtain a license to engage in the profession of architecture, and as it must act wholly by human agency, it could engage in that art or business only by employing individuals who could carry on that business as its officers, agents or employees. The act is effective upon corporations only to this extent, that if it undertakes to do business of that character, either the persons whom it engages therein must be certificated architects under this statute, or, when contracting for plans and specifications, for the erection of buildings for other persons, such persons must be informed that the plans and specifications will be prepared by some-one who is not a certificated architect. The act does not prohibit a corporation from contracting to furnish to an-other person plans and specifications which are to be pre-pared by a third person who is a certificated architect. Nor is there anything in the object of the act or the evils to be removed thereby which would raise the necessary im-plication that it was intended to prevent such practice.'

"This decision fully covers the present case and holds that a corporation may practice architecture. Defendant was, therefore, lawfully formed for that purpose and cannot be ousted from the exercise of that privilege.

[3] "The complaint in this case alleges that defend-ant's articles of incorporation and by-laws do not require its members or employees to be certificated architects, but does not charge that they are not in fact certificated, or that if any of them are not certificated, defendant has failed to inform the county of Los Angeles of that fact; and hence

for all that appears in the complaint, the defendant may be practicing in an entirely lawful manner. Whether it is so doing or not, the fact remains that the practice of architecture was lawfully open to it, and that it was lawfully formed for that purpose. [4] Should it in fact violate the law by engaging uncertificated persons to perform the architectural services for which it has contracted without informing its patrons of that fact, it will be subject to penal prosecution for violation of the statute and its contracts with its patrons will be void, but I know of no law by which the loss of the right to further practice architecture may be inflicted upon it as a penalty for such violation of the statute.

[5] "Plaintiff's complaint also alleges that defendant's articles of incorporation were filed in the office of the county clerk of Los Angeles county and in the office of the secretary of state on July 1, 1921, but that defendant has never filed in the office of the county clerk of Los Angeles county, where its principal place of business is located, a copy of its articles of incorporation certified by the secretary of state, as required by section 296 of the Civil Code, and that, therefore, it is not authorized to transact any business. I do not think the provision of section 296 to which reference is thus made is applicable to the defendant. In 1921, the statutory mode of organizing corporations was remodeled and substantially changed in several respects. Prior to that time, the original articles of incorporation were in all cases filed with the county clerk of the county in which the principal place of business was located, and a certified copy thereof was filed with the secretary of state, upon which, if the name did not conflict with that of other corporations, he issued a certificate of incorporation and the organization of the corporation was then complete (Civ. Code, sec. 296); but the corporation was required to file in every county where it owned property, except that where its original articles were filed, a certified copy of the copy of its articles filed with the secretary of state (Civ. Code, sec. 299). In 1921, this plan was changed so as to require the original articles of incorporation to be filed with the secretary of state and a certified copy thereof to be filed with the county clerk of the county where the principal place of business is located, and in every county where the

corporation transacts business; and to carry out this change the legislature amended sections 296, 299 and other sections. These amendments took effect July 29, 1921, while the defendant's incorporation was completed under the then existing law on July 1, 1921. The amendment of section 296 contains the following provision:

" 'Upon the filing of articles of incorporation in the office of the Secretary of State . . . the Secretary of State must issue to the corporation, over the great seal of the state, a certificate that the original articles containing the required statement of facts have been filed in his office, and thereupon the persons signing the articles and their associates and successors shall be a body politic and corporate . . . ; provided, however, that no corporation shall be authorized to transact any business until it shall have filed in the office of the county clerk of the county in which its principal business is to be transacted a copy of the articles of incorporation.'

"Plaintiff claims that this proviso, which was first inserted in the section by this amendment, applies to corporations organized before the amendment took effect, and hence to the defendant. In support of this claim, plaintiff contends that the legislature has full power to make such a change of law applicable to existing corporations. This may be conceded, but the question here is whether, under a proper construction of the law, it has done so. . . .

[6] "The construction of the amendment which plaintiff proposes would give it a retroactive effect. Plaintiff disputes this proposition, but I see no escape from it, for corporations, including defendant, which were fully organized before July 29, 1921, were entitled to do business from the date of organization until July 29, 1921, and on the latter date, if the plaintiff's construction be followed, this existing right was terminated by the amendment. In other words, a corporation which had been fully organized under the law in force at the time, lost its corporate existence, or at least its corporate powers, by the effect of a subsequent law. Such a statute is within this definition of a retrospective law in 5 Cal. Jur. 747: 'A retrospective law is one which operates upon matters which occurred, or rights and obligations which existed, before the time of enactment.' The established rule regarding such statutes

is that 'no statute or constitutional provision shall be so construed as to give it a retroactive effect, to divest individuals of rights vested previous to its passage, or to affect pending litigation, unless such intent is expressly declared or necessarily implied in the language of the provision to be construed.' (5 Cal. Jur. 750.) I find no such intent expressed in the amendment of section 296. Its language indicates rather that it was dealing with corporations whose organization should be thereafter begun. Such corporations would not file their original articles in the county where the principal place of business was located, and to assure persons there doing business with them some local means of ascertaining their corporate existence and powers, the legislature added the proviso requiring a copy of the articles to be filed in the office of the county clerk of the county where the principal place of business is located. No such provision was needed as to corporations previously organized, their original articles already being on file in that office. The word 'shall' found in this proviso, while mandatory in meaning, usually refers to the future, and the expression 'shall be authorized' is directed to such authority as may be conferred in the future. It does not cover the case of the defendant, which had already received its authority when the amendment took effect.''

For the foregoing reasons the judgment of the lower court and the intermediate order entered therein denying the plaintiff's motion for a temporary injunction are, and each is, affirmed.

Langdon, J., Preston, J., Curtis, J., Shenk, J., and Seawell, J., concurred.