[Civ. No. 15714. Second Dist., Div. One. July 8, 1947.]

Estate of MARIA THRAMM, Deceased. TOM C. CLARK, as Attorney General of the United States, etc., Appellant, v. OTTO TILSNER et al., Respondents.

John F. Sonnett, Assistant Attorney General, James M. Carter, United States Attorney, Ronald Walker, Clyde C. Downing, Assistant United States Attorneys, Harry LeRoy Jones, M. S. Isenbergh, Special Assistants to the Attorney General, David Schwartz and David E. Feller for Appellant.

Benj. S. Parks and Robert M. Porter for Respondents.

WHITE, J.—Tom C. Clark, Attorney General of the United States, as successor to James E. Markham, Alien Property Custodian, appeals from a decree of distribution denying the rights of the Alien Property Custodian to payment of bequests made to Ernst and Walter Thramp in the will of Maria Thramm, deceased.

The testatrix died in Los Angeles County, California, on June 7, 1943, and her holographic will was admitted to probate in said county on July 6, 1943, and letters testamentary issued thereon to the Bank of America.

Insofar as pertinent to the issues involved on this appeal, the provisions of the will are as follows:

"To Mr. Ernst & Walter Thramp now living in Berlin, Germany, 37 Steinmetz Str. $2,000 each and if they be deceased to their heirs. Also my husband's watch, his Mother's diamot ring, cuff buttons and old ring should go to Ernst & Walter Thramp."

Following some eleven additional bequests to American nationals and after listing her assets, the decedent then provided:

"A year after my death my estate should be settled. If it is impossible to do so, with Germany, then everything should go to my brothers Otto & Fred Tilsner and their children."

Finally, the will provided: "If my estate at the time of my death exceed the amount bequeathed then the balance is to be equally divide*t* between my brothers children Otto & Fred Tilsner."

On May 10, 1945, the executor filed its Second and Final Account, Report and Petition for Distribution which was set for hearing on May 31, 1945, after due notice of hearing had been given to the Alien Property Custodian, appellant herein, and to the attorneys for Ernst and Walter Thramp. Because Ernst and Walter Thramp are German nationals residing in Germany, the Alien Property Custodian on May 24, 1945 filed in this estate "Vesting Order number 4956" (10 Fed. Reg. 6471), vesting in himself all their right, title and interest in the estate of Maria Thramm, and after said last-mentioned date the Alien Property Custodian appeared herein as the successor in interest of the aforesaid two German nationals. On October 14, 1946, the Attorney General of the United States, by virtue of Executive Order No. 9788 (11 Fed.Reg. 11981) succeeded to all the duties and powers of the Alien Property Custodian.

Following approval and settlement of the Executor's Account, the petition for distribution came on for hearing, at which time evidence was introduced, the matter was argued and submitted to the court.

On August 3, 1945, the court filed a memorandum opinion holding that sections 259, 259.1 and 259.2 of the Probate Code were constitutional, and that because of these code sections, Ernst and Walter Thramp, being residents and nationals of Germany, could not inherit; that because the estate could not be settled within one year, the conditional bequest became effective. Distribution of the respective bequests to the two German nationals was ordered made to Otto and Fred Tilsner and their children.

On September 15, 1945, an amendment to section 259 of the Probate Code became effective, and thereafter and prior to the settlement of the formal findings of fact and judgment

pursuant to such memorandum opinion, the court without notice to the parties made an order under date of October 24, 1945, restoring the cause to the calendar for further hearing on the basis that the amendment to section 259 of the Probate Code operated retrospectively on a matter wherein the trial had already been completed. Respondents made a motion to set aside this ex parte order of October 24, 1945, which motion after due notice of hearing was heard and the matter argued on the 30th day of November, 1945, and the court thereafter made its order vacating the said ex parte order of October 24, 1945, and ordered preparation of findings of fact and judgment in accordance with the original memorandum opinion. Findings of fact and judgment in accordance with such order and such original memorandum opinion were signed by the court and filed herein on April 1, 1946.

It is first contended by appellant Attorney General of the United States that the court erred in its interpretation of the clause in decedent's will reading: "A year after my death my estate should be settled; if it is impossible to do so, with Germany, then everything should go to my brothers Otto & Fred Tilsner and their children."

In this regard the probate court by its findings interpreted this clause to mean:

"That if relations existed between the United States and Germany one year after the date of the decedent's death, which occurred on June 7, 1943, preventing actual payment, distribution and delivery to Ernst and Walter Thramp, or their heirs, at that time in person, of the bequests made to them, that then and in that event the property should be distributed to her brothers Otto and Fred Tilsner, and their children, share and share alike. The Court further FINDS that the United States and Germany were at war on June 7, 1943, and continuously for more than one year thereafter, so that it was impossible to make actual payment, distribution and delivery to Ernst and Walter Thramp, or their heirs, in person, of the properties and monies bequeathed to them pursuant to the last will and testament of the decedent, and that by reason thereof and in accordance with the terms and conditions of the last will and testament of the decedent the bequest therein made to Ernst and Walter Thramp failed and the same and the whole thereof, in accordance with the terms and condition of said will, became and was payable to and distributable to Otto and Fred Tilsner, and their children, Marie Lee Johnson, Walter C. Tilsner, Howard J. Tilsner,

Arthur F. Tilsner, Herbert L. Tilsner and Arthur E. Tilsner, share and share alike.''

Appellant earnestly urges that this construction goes far beyond the meaning of the words actually used by the testatrix in that it construes the foregoing clause to mean that the bequests to Ernst and Walter Thramp, *and those bequests only,* were to be revoked if conditions ''with Germany'' were such that bequests were not actually distributed to them *personally* within one year. With this claim of appellant we cannot agree. A will is to be construed according to the intention of the maker (Prob. Code, § 101), ''and when an uncertainty arises upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, *taking into view the circumstances under which it was made.* . . . (Prob. Code, § 105.) (Emphasis added.)

A testamentary instrument should be examined with a view to discovering the decedent's testamentary scheme or general intention. And the apparent meaning of particular words, phrases and provisions is to be subordinated to this scheme, plan or dominant purpose (*Estate of Somerville,* 38 Cal.App.2d 463, 468 [101 P.2d 533]).

With the aforesaid particular clause of the will now engaging our attention before us, we must attempt to determine the intention of the testatrix from the words she used, in the light of the circumstances under which the document was made. It was a holographic will. It was made on February 3, 1942, at a time when the United States of America was at war with Germany. The testatrix made only one bequest to persons who were not citizens and residents of the United States, and that bequest was the aforesaid bequest to Ernst and Walter Thramp and their heirs, all of whom were nationals and residents of Germany. Under these circumstances surrounding the making of her will, we do not have to ''delve into the secret workings of the mind of the testatrix'' as urged by appellant, to ascertain from the wording of the will, in the light of the foregoing circumstances, that it was her intention that if, because of the war with Germany, her estate could not be settled within one year then the bequest and the only bequest she made to nationals and residents of Germany was to go to her brothers Otto and Fred Tilsner and their children, all of whom were citizens and residents of the United States, whose rights not only to inherit but to receive such be-

quests were not affected or impaired by the war with Germany.

It is next argued by appellant that the provision in the will "a year after my death my estate should be settled" is so uncertain as to be of no effect for the reason, asserts appellant, that "there were several ways by which the estate could have been settled, viz.: by payment of the bequests to the German nationals to the Alien Property Custodian as provided for in section 7(d) of the Trading with the Enemy Act or by depositing the said bequests in a blocked account, pursuant to Executive Order number 8389 (6 Fed.Reg. 2897)." The estate was not settled within a year. In determining what the testatrix meant by her use of the word "settled" in the last-mentioned phrase of her will, consideration should be given to the words which follow, reading: "If it is impossible to do so, with Germany." Being a holographic will, manifestly written by a person not possessed of technical legal knowledge, the word must be interpreted not in a technical sense, but by a consideration of the circumstances under which it was used in the making of the testamentary document (*Estate of Mayne,* 28 Cal.App.2d 340, 342 [82 P.2d 504]; Prob. Code, §§ 105, 106), and with a further view of not defeating the general intention of the testatrix.

In its determination that what the testatrix meant by the word "settled" was that if the war with Germany prevented "actual payment, distribution and delivery" of the bequests, the trial court was justified. In view of the circumstances surrounding the making of the will, the trial court was warranted in concluding from the words used that the express intention of the testatrix was that if her relatives could not receive their respective bequests, then her relatives in the United States should receive them. Manifestly, the language of the testatrix, viewed in the light of circumstances surrounding the making of the will and her general testamentary scheme and plan, negatives any logical inference or conclusion that it was her intention that under any circumstances the bequests to her relatives in Germany should go to some governmental agency such as the Alien Property Custodian. To us it clearly appears from the language of the will that the intention of the testatrix and her general testamentary plan and scheme was that her property was, in any event, to go to her relatives. And if the war with Germany prevented delivery of the bequests to her relatives residing in Germany then such bequests should go to her relatives in

the United States. The interpretation by the probate court of the aforesaid questioned language in the will finds ample support in law, reason and logic.

The court further found that on June 7, 1943 (date of death of the testatrix) residents and citizens of the United States did not possess the right, by treaty or otherwise, "to take upon the same terms and conditions as residents of Germany, by succession or by testamentary disposition, estates of real or personal property or the proceeds thereof of persons dying within the country of Germany; nor have they had the right to receive payment or delivery to them within the United States and its territories of monies or personal property or the proceeds of real property originating from such estates; that no reciprocal rights as defined by or set forth in sections 259 and 259.1 of the Probate Code of the State of California, existed either at the time of the death of the decedent or at any time thereafter between citizens and residents of the United States and residents and citizens of Germany, and that by reason of such fact any bequests, devises or legacies made by the decedent herein under and by virtue of her last will and testament on file herein to aliens, nationals, residents and citizens of Germany were and are entirely void and of no force or effect for any purpose whatever, and that the portion of decedent's estate so devised to such aliens, nationals, residents and citizens of Germany by said last will and testament upon the death of the decedent, in accordance with the terms and conditions of the last will and testament of the decedent, became payable to and distributable to Otto and Fred Tilsner, and to their children, Marie Lee Johnson, Walter C. Tilsner, Howard J. Tilsner, Arthur F. Tilsner, Herbert L. Tilsner and Arthur E. Tilsner, share and share alike."

It is conceded that the testatrix at the time of her death was a citizen and resident of the United States, and the court found that the above-named Otto and Fred Tilsner and their children are and each of them is a citizen and resident of the United States. That the aforementioned Ernst and Walter Thramp and each of them, as well as their heirs are and each of them is an alien German national and resident of Germany.

The California statutes under consideration with reference to the just-mentioned findings (Prob. Code, §§ 259, 259.1 and 259.2) provided in section 259.1 that the burden of proving the existence of the reciprocal rights dealt with in section 259

was upon the ''non-resident alien.'' This section was amended in 1945 (Stats. 1945, ch. 1160, § 1) to provide that ''It shall be presumed that such reciprocal rights exist and this presumption shall be conclusive unless prior to the hearing on any petition for distribution of all or a portion of such property to an alien heir, devisee or legatee not residing in the United States or its territories a petition is filed by any person interested in the estate requesting the court to find that either one or both of such reciprocal rights does not or do not exist as to the country of which such alien heir, devisee or legatee is resident. Upon the hearing of such petition the burden of establishing the nonexistence of such reciprocal right or rights shall be upon the petitioner. . . .''

The amendment became effective on September 15, 1945, which date was subsequent to the filing of the final account and petition for distribution, and approval and settlement of the account. The effective date of the amendment was also subsequent to the introduction of evidence and submission to the court of the petition for distribution. The effective date of the amendment was also subsequent to August 3, 1945, when the court filed a memorandum opinion holding not only that because the estate could not be settled within one year the conditional bequest hereinbefore referred to became effective, but that sections 259, 259.1 and 259.2 of the Probate Code were constitutional, and that because of these sections the aforesaid German nationals could not inherit. The effective date of the amendment was, however, prior to the signing and filing of the findings of fact and decree herein on April 1, 1946.

Appellant contends that the last-mentioned findings are erroneous under the law in effect when they were signed and filed. That since no evidence had been introduced on the question of reciprocity the court's findings depended solely upon the statutory provisions as to the location of the burden of proof. That the statute having been amended prior to the signing and filing of the findings, it was the duty of the court to apply the amendment and the presumptions therein provided in making its decision.

■ Assuming the correctness of appellant's argument that the amendments to sections 259, 259.1 and 259.2 of the Probate Code were purely procedural insofar as that portion thereof pertaining to the burden of proof is concerned, nevertheless they could not be made applicable to this case since the entire controversy had been tried, submitted to the court and a memorandum opinion rendered by the court prior to

the effective date of the amendments. The amendment which changed the location of the burden of proof on the question of reciprocity relates wholly to what must be done upon the trial or hearing of any petition for distribution. Manifestly, it applies only to trials or hearings which take place after its enactment and can have no effect whatsoever upon trials previously had. It operates only prospectively. Since this cause was tried under the presumptions in force at the time of trial, and before the effective date of the amendment, such amendment would not govern nor invalidate procedural steps taken before its effective date (*Estate of Patterson,* 155 Cal. 626, 638 [102 P. 941, 132 Am.St.Rep. 116, 18 Ann.Cas. 625, 26 L.R.A.N.S. 654]; *Dunlap* v. *United States,* 43 F.2d 999; *East Pratt Coal Co.* v. *Jones,* 16 Ala.App. 130 [75 So. 722, 724]; *People* v. *Chalmers,* 5 Utah 201 [14 P. 131]).

In the absence of a clearly expressed legislative intent to the contrary, every statute will be construed to operate prospectively, and will not be construed to affect pending proceedings unless such intention is expressly declared or necessarily implied from its language (*Gates* v. *Salmon,* 28 Cal. 320; *Vanderbilt* v. *All Persons,* 163 Cal. 507 [126 P. 158]; *East Bay Municipal Utility Dist.* v. *Garrison,* 191 Cal. 680 [218 P. 43]; *Montecito County Water Dist.* v. *Doulton,* 193 Cal. 398 [224 P. 747]; *People* v. *Allied Architects' Assn.,* 201 Cal. 428 [257 P. 511]; *Blade* v. *Superior Court,* 102 Cal.App. 375 [283 P. 81]). Here there is no such declaration, nor is the intention necessarily implied from the language of the amendment. The construction contended for by appellant would work an injustice to parties to the pending litigation, a result which cannot be presumed the Legislature intended. In view of the authorities it is our conclusion that the amendment should not be given a retroactive operation.

Furthermore, the Legislature is without power to impair or destroy the obligations of contractual or vested rights, and any statute which affects a vested right cannot be given retrospective operation. (*Estate of Wellings,* 197 Cal. 189, 195 [240 P. 21]; *Estate of Arms,* 186 Cal. 554, 563 [199 P. 1053].)

The amendment here in question was not in force until September 15, 1945. The testatrix died June 7, 1943, and the rights herein involved became vested immediately upon her death. Hence, the amendment does not affect any of those vested rights in any manner. The new statute has changed the burden of proof and imposed a presumption

against the resident heirs' rights of inheritance, which prior to that time had been a presumption in their favor, thereby affecting their right, which was vested, to receive the property without the necessity of such proof. Reciprocal rights, as defined by the new statute, eliminate many conditions which were essential to inheritance under the old statute, thereby broadening the possibility of the alien inheriting, all in derogation of the vested rights of the resident heir.

Were the statute, as amended, to be applied to the case at bar, it would completely deprive the resident heirs of vested rights, in that it provides that a petition for the determination of reciprocal rights *must be filed prior to the hearing on any petition for distribution,* which requirement was not in the former statute, and the new statute made no provision for protecting the rights of heirs who had not filed their petition prior to the filing of a petition for distribution. In the instant case the petition for distribution had been filed May 10, 1945, the hearing on the petition had been had, the cause submitted July 12, 1945, and the court had ordered judgment on August 3, 1945. The amendment to the statute did not become effective until September 15, 1945. Obviously it was too late to file a petition for determination of existence of reciprocal rights in this case *prior* to the hearing of the petition for distribution.

Appellant's claim that the court's findings are inconsistent in that a different distribution must be ordered in the event it be found that the German nationals are deprived of their legacies by virtue of section 259 of the Probate Code than if such deprivation was occasioned by the court's interpretation of the will, is unavailing. Since appellant's interest is entirely dependent upon the German nationals having some interest in the estate, he is not injuriously affected, because both or either findings prevents distribution to him. He cannot be heard to complain of errors affecting only other parties to the proceedings who do not appeal (*De Arman* v. *Connelly,* 134 Cal.App. 173, 181 [25 P.2d 24]; 2 Cal.Jur. 840-842).

Finally, appellant earnestly insists that section 259 of the Probate Code dealing with reciprocal rights of nonresident aliens to land and personal property by inheritance or succession is void and unconstitutional because the California statute invades the domain of foreign affairs which is the exclusive prerogative of the federal government, and fully occupied by it. The federal power invoked by appel-

lant is based upon the provisions of the federal Constitution investing the treaty making power in the federal government (U. S. Const., art. I, § 8, clause 11) ; and the provisions of the Constitution which prohibit states from entering into treaties with other powers (U. S. Const., art. I, § 10, clause 1).

These claims of appellant insofar as the instant case is concerned, were decided adversely to him by the Supreme Court of the United States in *Clark* v. *Allen,* No. 626, —— U.S. —— [67 S.Ct. 1431, 91 L.Ed. ——] October term, 1946, decided June 9, 1947, wherein the court said:

"We accordingly hold that Article IV of the treaty does not cover personalty located in this country and which an American citizen undertakes to leave to German nationals. We do not know from the present record the nationality of Alvina Wagner. But since the issue arises on the Government's motion for judgment on the pleadings, we proceed on the assumption less favorable to it, viz., that she was an American citizen.

"Fourth. It is argued, however, that even though the provision of the treaty is inapplicable, the personalty may not be disposed of pursuant to the California statute because that statute is unconstitutional. Issues under the Fourteenth Amendment are not raised as in *Terrace* v. *Thompson,* 263 U.S. 197 [44 S.Ct. 15, 68 L.Ed. 255]. The challenge to the statute is that it is an extension of state power into the field of foreign affairs, which is exclusively reserved by the Constitution to the Federal Government. That argument is based on the fact that under the statute the right of nonresident aliens to take by succession or testamentary disposition is dependent upon the existence of a reciprocal right on the part of citizens of the United States to take personalty on the same terms and conditions as residents and citizens of the other nation. The argument is that by this method California seeks to promote the right of American citizens to inherit abroad by offering to aliens reciprocal rights of inheritance in California. Such an offer of reciprocal arrangements is said to be a matter for settlement by the Federal Government on a nation-wide basis.

"In *Blythe* v. *Hinckley,* 180 U.S. 333 [21 S.Ct. 390, 45 L.Ed. 557], California had granted aliens an unqualified right to inherit property within its borders. The alien claimant was a citizen of Great Britain with whom the United States had no treaty providing for inheritance by aliens in this country. The argument was that a grant of rights to aliens

by a State was, in absence of a treaty, a forbidden entry into foreign affairs. The Court rejected the argument as being an extraordinary one. The objection to the present statute is equally far fetched.

"Rights of succession to property are determined by local law. See *Lyeth* v. *Hoey,* 305 U.S. 188, 193 [59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410]; *Irving Trust Co.* v. *Day,* 314 U.S. 556, 562 [62 S.Ct. 398, 86 L.Ed. 452, 137 A.L.R. 1093]. Those rights may be affected by an overriding federal policy, as where a treaty makes different or conflicting arrangements. *Hauenstein* v. *Lunham, supra.* Then the state policy must give way. Cf. *Hines* v. *Davidowitz,* 312 U.S. 52 [61 S.Ct. 399, 85 L.Ed. 581]. But here there is no treaty governing the rights of succession to the personal property. Nor has California entered the forbidden domain of negotiating with a foreign country, *United States* v. *Curtiss-Wright Corp.,* 299 U.S. 304, 316-317 [57 S.Ct. 216, 81 L.Ed. 255], or making a compact with it contrary to the prohibition of Article I, Section 10 of the Constitution. What California has done will have some incidental or indirect effect in foreign countries. But that is true of many state laws which none would claim cross the forbidden line."

In the case now engaging our attention, the testatrix was an American citizen and the testamentary disposition to the German nationals was of personal property. Under the decision just cited, such testamentary disposition is governed by the laws of the State of California.

For the foregoing reasons, the decree appealed from is affirmed.

York, P. J., and Doran, J., concurred.