**BROWNELL, Atty. Gen.**

v.

**EDMUNDS et al.**

No. 6614.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 12, 1953.

Decided Dec. 17, 1953.

Albert Parker, Attorney, Department of Justice, Washington, D. C. (Dallas S. Townsend, Asst. Atty. Gen., Washington, D. C., Howard C. Gilmer, Jr., U. S. Atty., Western District of Virginia, Roanoke, Va., James D. Hill, George B. Searls, Washington, D. C., and Elmer J. Kelsey, Attorneys, Department of Justice, New York City, on the brief), for appellant.

Edward S. Graves, Lynchburg, Va. (Thomas J. Williams and Edmunds, Whitehead, Baldwin and Graves, Lynchburg, Va., on the brief), for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal in an action commenced by the Attorney General in the court below pursuant to section 17 of the Trading with the Enemy Act, as amended, 50 U.S.C.A.Appendix, § 17, to recover a bequest in favor of certain German legatees under the will of Mrs. Shirley M. Suhling, who died a resident of Lynchburg, Virginia, in April 1945. In a prior action commenced by the Alien Property Custodian in 1946 to obtain the bequest, the District Court denied motion of plaintiff for summary judgment, without prejudice to his right to renew the motion at the termination of the war between the United States and Germany. Clark v. Edmunds, D.C., 73 F.Supp. 390. That action has abated and been dismissed of record. After the termination of the war by the Joint Resolution of Congress of October 19, 1951, the present action was commenced by the Attorney General to collect the bequest. The District Judge in granting a motion of defendants for summary judgment held that no interest in the bequest vested in the legatees until the termination of the war and that the bequest was void because in contravention of the rule against perpetuities, 110 F. Supp. 828. From this judgment in favor of the defendants the Attorney General has appealed.

The will of Mrs. Suhling, which was executed July 11, 1944, contained a number of bequests, one of which was intended to make some provision for the relatives of her deceased husband upon the termination of the war then in progress. That bequest, which is the only one of importance here, is as follows:

"I also want my husband's family in Bremen, Germany, the Stellohs

and Kleintitschens, to share in my estate (should they survive this war) to the extent of $20,000.00".

Mrs. Suhling's deceased husband was a German who had been naturalized in this country and who had relatives, consisting of a sister and her children and grandchildren, living in Bremen. Mrs. Suhling knew the difficulty of making gifts to residents of enemy countries in time of war because of the experience of her deceased husband, who had attempted to set aside money for a relative in Germany during World War One and had had it confiscated. With respect to this the judge below found:

" * * * the parties have stipulated that, if two of the surviving sisters of Mrs. Suhling were to testify, they would say, in effect, that Mrs. Suhling was aware of the difficulties involved in giving money to German citizens during a war period, and that if such a gift were made during a war period it was liable to be confiscated by the United States Government, that she knew that such difficulties existed longer than the period of hostilities and existed until the official termination of the war, and that such difficulties had been brought particularly to the attention of Mrs. Suhling and other members of her family because of the fact that her husband undertook to set aside money for a relative in Germany during World War I, which was confiscated by the United States Government, and her husband had to sue to get his money back. Further, that Mrs. Suhling visited Bremen in 1921, and observed the unsettled condition of the family's financial affairs resulting from the war, even at that date."

Mrs. Suhling was not in touch with her husband's family in Bremen during the war and did not so much as know that the husband's sister had died in 1943. She evidently intended by the bequest, not to make provision for such of the members of the family as might be living at her death, and whose shares would be forfeited if the war was still in progress, but for such as might be living at the end of the war and who would be in need of help at that time. Since it was not certain that the war would end within the period prescribed by the rule against perpetuities, we think, as did the District Judge, that the bequest must fail and the property go under the residuary clause of the will. 1 Minor on Real Property 2d ed. §§ 809, 811, 824. This being true, there was no vesting of any estate in an alien enemy which would render it subject to seizure under the statute here relied on.

It is argued that, because of the rule favoring the early vesting of estates, the class of persons who are to take the bequest under the will of Mrs. Suhling must be determined as of the date of her death and that the interest thus taken would be subject to the provisions of the statute. We think, however, for the reasons heretofore stated, that the clear intent of the testatrix here was that the class entitled to take under the bequest was to be determined at the end of the war and not at her death. The early vesting rule is to be applied in the absence of any expression of a contrary intent and not to defeat such intent, where, as here, it is clearly expressed. Griffin v. Central National Bank of Richmond, 194 Va. 485, 74 S. E.2d 188. The rule applicable is thus stated in 57 Am.Jur. p. 844:

"Where possession and enjoyment of a testamentary gift to a class is postponed until a time subsequent to the death of the testator or until the happening of a designated contingency, or both, the view is generally taken that, in the absence of a contrary testatorial intention, all members of the class who come into being prior to the time for distribution of the gift are entitled, even though born after the death of the testator, to share therein."

The Virginia decisions are in accord with this statement of the rule. In Driskill v. Carwile, 145 Va. 116, 133 S.

E. 773, at page 774, in which a devise of property after termination of a life estate to living heirs of testator's brothers and sisters was held a gift to a class, the court said:

"The general rule is, that the time for fixing the membership in a class taking under a will is the death of the testator; but, where the distribution is to be made among a class at a time subsequent to the testator's decease, then only those who belong to the class when such time arrives are entitled to share in the distribution." (Citing cases.)

See also Callis v. Ripley, 161 Va. 472, 171 S.E. 497, where the testator, after creating various life estates, provided that the remainder "be equally divided with my next surviving heirs", in the event the last life tenant should die without issue surviving. It was held that the class entitled to share therein was determinable as of the date of the death of the last life tenant and not that of the death of the testator. And see Cheatham v. Gower, 94 Va. 383, 26 S.E. 853.

■■ The words of the testatrix in the will in this case are, to my husband's family "should they survive this war". Clearly the words of survivorship here relate to the period of distribution, when the war ends, and the gift is contingent with no member of the family having a vested interest. Since the gift is postponed until the happening of a designated contingency, the determination of the membership of the class, "my husband's family," would not be ascertainable until the happening of the contingency and would include all members of the class then in being including those born after the death of the testator. The gift is therefore void under the rule against perpetuities since it might not vest during lives in being plus the 21 year and 10 month period. To come within the requirement of the rule it is not sufficient that the event upon which the estate is to vest, when viewed prospectively, may occur within the crucial period. It is necessary that, when so

viewed, it must occur within the period. Shenandoah Valley Nat. Bank v. Taylor, 192 Va. 135, 63 S.E.2d 786, 25 A.L.R.2d 1104; Claiborne v. Wilson, 168 Va. 469, 192 S.E. 585; Skeen v. Clinchfield Coal Corp., 137 Va. 397, 119 S.E. 89.

■ Even if the rule against perpetuities be disregarded, we think it clear that the bequest was not subject to seizure under the statute and regulations relied on. The pertinent provision of the Trading with the Enemy Act, Section 7(c), 50 U.S.C.A.Appendix, § 7(c), subjects to seizure only property "belonging to or held for, by, on account of, or on behalf of, or for the benefit of, an enemy" and the pertinent portion of the regulation promulgated thereunder, being sections 2(c) and (f) of the order dated July 6, 1942, Executive Order No. 9095, as amended, 50 U.S.C.A.Appendix, § 6 note, subjects to seizure:

"(c) any other property or interest within the United States of any nature whatsoever owned or controlled by, payable or deliverable to, held on behalf of or on account of, or owing to, or which is evidence of ownership or control by, a designated enemy country or national thereof: * * *;".

"(f) any property of any nature whatsoever which is in the process of administration by any person acting under judicial supervision or which is in partition, libel, condemnation or other similar proceedings and which is payable or deliverable to, or claimed by, a designated enemy country or national thereof."

Under the bequest here under consideration, none of the Stellohs or Kleintitschens was to take anything until the end of the war, when the country of which they were nationals would cease to be an enemy country. As they were to take no interest in the property covered by the bequest unless they survived the war, no property vested in them or was held for their benefit by reason of the bequest so long as the war was going on. See McGrath v. Ward, D.C.,

91 F.Supp. 636; Harvard Trust Co. v. Attorney General, 329 Mass. 79, 106 N. E.2d 269. The fact that there was no gift over here as in the cases cited is immaterial. The determinative fact is that enemy aliens could take nothing under the bequest so long as that status continued.

Affirmed.