Gertrude (Gertrud, Trude) KAMMHOLZ, Ingeborg Kammholz, Plaintiffs,

v.

Donald ALLEN, Albert Hirst, Lester A. Kent, Defendants.

United States District Court
S. D. New York.

Sept. 23, 1957.

Waldemar J. Dittmar, New York City, for plaintiffs.

Bernays & Eisner, New York City, for defendants Donald Allen and Albert Hirst.

Bruno Schachner, New York City, for defendant Lester A. Kent.

CASHIN, District Judge.

Plaintiffs move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. The answering defendants (Lester A. Kent, pursuant to stipulation, is not yet required to answer) cross-move for summary judgment and also move for dismissal of the complaint for failure to state a claim upon which relief can be granted. Rule 12(b) of the Federal Rules of Civil Procedure.

The facts, as pleaded in the complaint, insofar as they are relevant to this decision, are as follows:

Rudolf Lesch, an American citizen of German descent, died testate on March 9, 1946 while domiciled in the County and State of New York. The portions of his will which relate to the issues herein are as follows:

*"Article VI.*

"I give and bequeath to said *Allen* [defendant Donald Allen] all the shares of stock, both Class 'A' and

Class 'B', of *Rudolf Lesch Fine Arts, Inc.* (hereinafter referred to as 'the Corporation'), that I may hold at the time of my death, but only upon the following terms and conditions:

\*　\*　\*　\*　\*　\*

"(2) That he, his executors, administrators, distributees and assigns, and all other successors in interest as holders of said shares, will make the following payments:

"(a) Pay to my said sister, *Emma,* as long as she may survive me, the sum of One Hundred Fifty Dollars ($150) per month; upon the death of the survivor of said *Emma* and myself, pay to said *Trude,* [plaintiff Gertrude Kammholz] the sum of One Hundred Twenty Dollars ($120) per month for the term of her natural life, and upon the death of the survivor of myself, said *Emma* and said *Trude,* pay to said *Ingeborg* [plaintiff Ingeborg Kammholz] the sum of One Hundred Dollars ($100) per month for the term of her natural life. The payments herein directed shall, however, commence and become due and payable only as, if and when, by act of Congress and/or by proclamation of the President, direct payment to said persons is again permitted.

\*　\*　\*　\*　\*　\*

"(3) During the lifetime of my attorney, *Albert Hirst,* [defendant herein] none of the payees named in paragraph '2' of this Article shall have any right to sue or in any other way to enforce payment against said *Allen,* his executors, administrators, distributees and assigns, and all other successors in interest as holders of said shares, but such rights shall vest exclusively in my said attorney; after his death the said payees shall have all rights to sue or otherwise to enforce payment.

\*　\*　\*　\*　\*　\*

"(6) That *Allen* shall execute any and all agreements, instruments and documents that my said attorney shall deem necessary or expedient in the premises, so as to assure performance of these terms and conditions and of the provisions of *Article VII* hereof. Said agreements shall provide that any and all certificates of stock issued at any time to *Allen,* his executors, administrators, distributees and assigns, and all other successors in interest as holders of said shares, shall at all time be endorsed so as to indicate the duty of the holder to make the payments which I directed in paragraph '2' hereof.

\*　\*　\*　\*　\*　\*

### "*Article VIII.*

"I give, devise and bequeath one-half of all the rest, residue and remainder of my property, whether real, personal or mixed and wheresoever situated, except my said German estate, to my friend, *Donald R. Allen,* if living, and the other one-half to my friend, *Albert Hirst,* if living, but if one of them shall have predeceased me, then the whole thereof to the survivor of them. I am making these provisions in recognition of the loyalty and friendship which these men have shown me during an association with me of many years.

### "*Article IX.*

"I hereby constitute and appoint said *Albert Hirst* to be the *Executor* of this my Last Will and Testament, and if he shall not survive me or shall for any reason be unable or unwilling to complete the administration of my estate, then and in these events, I constitute and appoint said *Donald R. Allen* to be *Executor* in his place and stead, with the same power and authority as if herein named as such in the first place. I direct no bond be required of my said *Executor* in any court which may have jurisdiction over my estate or any part thereof."

Emma Phillips predeceased the testator. Plaintiffs herein, Gertrude Kammholz, daughter of Emma, and Ingeborg Kammholz, daughter of Gertrude, of course, survived the testator.

On March 25, 1946 an order was entered in the Surrogate's Court, New York County, providing for service of citation on Emma Phillips, Gertrude Kammholz and Ingeborg Kammholz or other unknown heirs at law by publication, and further providing for the citation of the Alien Property Custodian. The Alien Property Custodian, by James L. Duncanson, appeared in the probate proceedings on behalf of the aliens. The will of the testator was admitted to probate on October 2, 1946. The Decree admitting the will to probate provided for the issuance of letters testamentary to the Executor and restrained him from delivering the stock mentioned in Article VI of the will pending further order of the Surrogate.

On March 28, 1947 General License No. 94 was promulgated by the Secretary of the Treasury which, by its terms, licensed transactions, as of December 31, 1946, with German nationals specifically reserving, however, the previous state of affairs as to any property in which, on the effective date of the License, German nationals had an interest.

On July 9, 1947 the office of Alien Property Custodian issued Vesting Order 9351 whereby the Attorney General, through the aforesaid office seized "all right, title, interest and claim of any kind or character whatsoever" of the plaintiffs "in and to the Estate of and the Trust created under the will of Rudolf Lesch".

On July 22, 1947 demand was made by the Office of Alien Property, both to Allen, as Trustee, and Hirst, as Executor, for delivery of the interests covered by the vesting order.

As of March 27, 1948 Allen entered into an agreement with the Attorney General whereby the Attorney General assigned to Allen any rights in and to the Estate of Rudolf Lesch which had been seized by Vesting Order 9351. The agreement further contained a consent by the Attorney General to the entry of an *ex parte* order in the Surrogate's Court of New York County, removing the restraint contained in the Decree of October 2, 1946. On June 9, 1948 a Decree was entered removing the aforesaid restraint and authorizing the Executor to approve the agreement between Allen and the Attorney General.

■ Plaintiffs concede both in counsel's affidavit in support of the cross-motion for summary judgment and in the memorandum of law that if, prior to the effective date of General License No. 94, plaintiffs had an interest which was capable of seizure or sequestration, then such seizure and the subsequent sale of the interest to Allen is a complete bar to the present suit.

■ The terms of the Trading with the Enemy Act with regard to the type of interests which are capable of seizure are rather broad, being defined as—

"* * * any money or other property including (but not thereby limiting the generality of the above) patents, copyrights, applications therefor, and rights to apply for the same, trade marks, choses in action, and rights and claims of every character and description owing or belonging to or held for, by, on account of, or on behalf of, or for the benefit of, an enemy or ally of enemy not holding a license granted by the President hereunder, * * * ".[1]

Whether the interest of an enemy alien falls within the class subject to seizure is a question of state law.[2] The primary inquiry, therefore, since the decedent died a resident of New York State, is whether the plaintiffs herein, prior to the effective date of General License No.

---

1. 50 U.S.C.A.Appendix, § 7(c).

2. McGrath v. Ward, D.C.Mass.1950, 91 F.Supp. 636; Clark v. Continental National Bank of Lincoln, Neb., D.C.D.Neb. 1949, 88 F.Supp. 324.

94, had a property interest cognizable under the law of New York.

█ It is clear that under the law of New York it is immaterial whether an estate be vested or contingent in determining whether that estate is subject to seizure by a vesting order served pursuant to the Trading with the Enemy Act.[3] The fact that the time of payment is deferred until the happening of an event, whether certain or contingent, does not defeat the existence of an interest subject to seizure.[4]

In the instant case, an analysis of the terms of the testator's will indicates that the stock of the Rudolf Lesch Fine Arts, Inc., was to be charged with the payment of the annuities in question in no matter whose hands they were held. Thus, even though words of futurity are used when referring to the time payments are to commence, words of present gift are utilized to effect the gift of the stock, and the charge of the annuities upon the stock being contemporaneous with the gift of the stock adopt those words of present gift. Thus, the beneficiaries of the charge upon the stock had, at the time of decedent's death, a present interest in the charge even though the time of the commencement of the enjoyment of the charge was *in futuro*.

█ At first blush it would appear that the case of Hull v. Palmer, 213 N.Y. 315, 107 N.E. 653, 654, would be opposed to this holding. In that case, the gift of the principal of a trust fund to testator's son was to take effect "whenever he shall become financially solvent and able to pay all his just debts and liabilities from resources other than the principal of this trust fund". The son went through bankruptcy proceedings and was discharged. The principal of the trust fund was thereupon delivered to the son and the Trustee in bankruptcy sought to reach the funds. The Court of Appeals held that the funds could not be reached by the Trustee even though the interest of the son in the principal was, at the time of the testator's death, assignable. The theory of the decision was that the testator had imposed a condition on the gift, viz., that the son become financially solvent and able to pay his debts from resources other than the principal of the trust fund, which was a valid condition, not against public policy, and that to allow the Trustee in bankruptcy to reach the fund would be a frustration of the testator's interest. However, whatever the law may be with regard to a Trustee in bankruptcy, as a representative of creditors, vis-a-vis a legatee, the Government, under the Trading with the Enemy Act, is in a different position. No doubt the seizure of the rights of the alien beneficiaries herein frustrates the testator's intent. But any seizure of property left to an alien by a testator, even though it be a present estate in enjoyment, is such a frustration but is obviously valid. The New York cases [5] are unanimous in holding that such a frustration must be upheld.

█ The present case is distinguishable from those wherein a condition is such that if the gift to an alien fail, a gift over is to be made to an alternate legatee who is not barred from taking by virtue of the Trading with the Enemy Act.[6] It is clearly not against

---

3. In re Bendheim's Estate, 124 Misc. 424, 209 N.Y.S. 141, affirmed 214 App.Div. 716, 209 N.Y.S. 794; Cf. McKinney's Consolidated Laws of New York, c. 50, Real Property Law, § 59.

4. In re Heye's Will, 195 Misc. 1026, 91 N.Y.S.2d 266; In re Reiner's Estate, Sur., 44 N.Y.S.2d 282; In re Carrington's Estate, 195 Misc. 442, 90 N.Y.S.2d 757.

5. In re Heye's Will; In re Reiner's Estate; In re Carrington's Estate, all supra, note 4; In re Woelfinger's Estate, 191 Misc. 526, 76 N.Y.S.2d 554.

6. Matter of Reuss' Estate, 196 Misc. 24, 91 N.Y.S.2d 479; In re Engelking's Will, 185 Misc. 866, 57 N.Y.S.2d 745; In re Haskin's Will, Sur., 65 N.Y.S.2d 226; In re Bantin's Estate, Sur., 68 N.Y.S.2d 516.

public policy to avoid confiscation by providing for a non-enemy alien to receive the benefit of the testator's bounty. It would be against public policy, however, to sanction a testator's circumvention of the intent of Congress by deferring the payment of a present charge on stock in favor of enemy aliens until such payments once again become legal.[7] That there is no provision for accumulating the installment payments during the period when the enemy aliens are prohibited from taking cannot destroy the status of the gift of the annuities in the form of a charge on the stock from a present interest to a mere expectancy.

The cases of Brownell v. Edmunds, 4 Cir., 209 F.2d 349, McGrath v. Ward, supra, note 2, and Harvard Trust Co. v. Attorney General, 329 Mass. 79, 106 N.E. 2d 269, reach a different conclusion than the one arrived at herein. All of these decisions, however, recognize that whether an interest in personal property is subject to seizure under the Trading with the Enemy Act is a matter of the law of the state in which the testator died domiciled. As has been shown above, the New York cases unanimously hold an interest such as the one in question subject to seizure. Thus, the decisions listed above, construing the laws of states other than New York, are not controlling in the present case.

Since all of the facts upon which this decision is based are pleaded in the complaint, defendants' motion for an order dismissing the complaint for failure to state a claim upon which relief can be granted, is granted. Plaintiffs' motion for summary judgment is denied.

Settle orders.

In re Van Dam's Estate, Sur., 43 N.Y. S.2d 184, is cited by plaintiffs for the proposition that a testamentary clause withholding payment until a legatee is no longer disabled from taking because of the Trading with the Enemy Act, is not against public policy. It should be noted

that in the decision relied upon, even though no alternative legatee was named, the rights of the Alien Property Office were reserved, apparently because no vesting order had been issued and served.

7. Cf. In re Heye's Will, supra, note 4.