IN RE TESTAMENTARY TRUST OF PASZOTTA ET AL. *v.*
CALUMET NATIONAL BANK OF HAMMOND,
TRUSTEE ET AL.

[No. 18,897. Filed April 3, 1958. Rehearing denied May 1, 1958.
Transfer denied June 25, 1958.]

*Dallas S. Townsend,* Assistant Attorney General of the United States, *James D. Hill, George B. Searls, Irwin A. Seibel,* Attorneys, Department of Justice; *Phil M. McNagny, Jr.,* United States Attorney; *Kenneth C. Raub* and *Edmund A. Schroer,* Assistant United States Attorneys, for appellant, Herbert Brownell, Jr.

*Edwin H. Friedrich, Charles Levin* and *Virginia Lanahan,* of counsel, all of Hammond, for appellees, Klara Huhn and Wanda Puppel.

CRUMPACKER, J.—This is an appeal by the Attorney General of the United States, acting in his capacity as successor to the Alien Property Custodian, from a decree of the Lake Superior Court wherein the assets in the hands of the Calumet National Bank, as the trustee of a testamentary trust created by the will of Herbert M. Paszotta, deceased, were ordered distributed to the appellees Klara Huhn and Wanda Puppel in disregard of a vesting order issued by said Attorney General on October 5, 1950, pursuant to the Trading with the Enemy Act, as amended, 40 Stat. 411, as amended, 50 U. S. C. App., §§5 (b) and 7 (c). Said vesting order reads as follows:

"Department of Justice
Office of Alien Property
Vesting Order 15163

"Re: Trust under Will of Herbert M. Paszotta, deceased, also known as Herbert Paszotta, deceased. File D 28-9181 E. T. Sec. 11891

"Under the authority of the Trading with the Enemy Act as amended and Executive Order 9788, and pursuant to law, after investigation, it is hereby found:

"1. That Klara Huhn and Wanda Puppel, nee Paszotta, whose last known address is Germany, are residents of Germany and nationals of a designated enemy country (Germany);

"2. That all right, title, interest and claim of any kind or character whatsoever of the persons named in sub-paragraph 1 hereof, and each of them, in and to the trust under the will of Herbert M. Paszotta, deceased, also known as Herbert Paszotta, deceased, is the property payable or deliverable to, or claimed by the aforesaid nationals of a designated enemy country (Germany);

"3. That such property is in the process of administration by Mrs. Helen B. Fisher, Trustee, acting under the judicial supervision of Lake Superior Court, Hammond, Indiana;

and it is hereby determined:

"4. That to the extent that the persons named in sub-paragraph 1 hereof are not within a designated enemy country, the national interest of the United States requires that such persons be treated as nationals of a designated enemy country (Germany).

"All determinations and all actions required by law, including appropriate consultation and certification, having been made and taken, and it being deemed necessary in the national interest.

"THERE IS HEREBY VESTED in the Attorney General of the United States the property described above, to be held, used, administered, liquidated, sold or otherwise dealt with in the interest of and for the benefit of the United States.

"The terms 'national' and 'designated enemy country' as used herein shall have the meanings prescribed in section 10 of Executive Order 9193, as amended.

"Executed at Washington D.C., on October 5, 1950.

"(Official Seal)

For the Attorney General:
/s/ Harold I. Baynton
Assistant Attorney General
Director, Office of Alien Property."

The challenged decree was apparently entered by the Lake Superior Court upon the legal conclusions (1) that the appellees Huhn and Puppel, when the above vesting order was issued, had a mere expectancy

of title to the property involved and had not yet taken anything under the Paszotta will and therefore there was nothing upon which said vesting order could operate; and (2) that the war with Germany, having in fact been terminated when the vesting order was issued, the purposes of the Trading with the Enemy Act no longer existed and hence the Attorney General had no legal right to the proceeds of the Paszotta trust.

Herbert M. Paszotta died testate on November 11, 1943. That part of his will pertinent to this inquiry is as follows:

"Third: I hereby give, bequeath, and devise, absolutely and forever, all the rest, residue and remainder of my property real, personal or of whatever nature and wherever situated of which I may die possessed or of which I may have the power of disposition, to the aforesaid Mrs. Helen Fisher, but IN TRUST nevertheless for the following trust purposes:

"a. To receive, hold and administer all of my said estate and property for the sole benefit of KLARA HUHN and WANDA PUPPEL both of Berlin, Germany, during the natural lives of said Klara Huhn and Wanda Puppel or until the termination of hostilities now in existence between the United States of America and the Nation of Germany, if said termination of hostilities occur before the deaths of Klara Huhn and Wanda Puppel.

"b. To manage and conduct the affairs relating to said property so that during the continuation of the aforesaid state of hostilities any and all proceeds resulting from the conduct of the property are held in safekeeping for the benefit of the aforesaid Klara Huhn and Wanda Puppel.

"c. To pay over, convey, and transfer absolutely in fee simple to Klara Huhn and Wanda Puppel, the entire principal of this trust upon the cessation of the aforesaid state of hostilities and then there to terminate the trust herein imposed, and should the deaths of Klara Huhn and Wanda Puppel occur before the aforesaid cessation of hostilities and before the resumption of normal commercial and political relations between the

United States of America and the Nation of Germany, then I direct that this trust is to cease and terminate, and the principal and all accumulated proceeds conveyed, transferred or paid over to said Helen Fisher, absolutely and in fee simple."

Klara Huhn still lives in Germany and Wanda Puppel, while still a German citizen, came to the United States as a quota immigrant in September, 1954, and now lives in Baltimore, Maryland.

It will be noted that the trust created by the Paszotta will was to terminate upon the cessation of hostilities and the resumption of normal commercial and political relations between the United States and Germany, and if Klara Huhn and Wanda Puppel were then alive the principal of said trust and all accumulations thereon should be paid over, conveyed and transferred to them absolutely and in fee simple. Upon the trial of this cause the parties stipulated, *inter alia,* as follows:

"(7) That the President of the United States of America by proclamation, No. 2714, dated December 31, 1946, (12 Federal Register 1) proclaimed the formal cessation of hostilities of World War II to be effected as of 12 o'clock noon, December 31, 1946.

"(8) That normal commercial and political relations between the United States of America and Germany and the citizens of both countries were resumed on December 31, 1946, by virtue of the United States Treasury General License No. 94, Code of Federal Regulations, Section 512.194."

Pursuant to such stipulation, no doubt, the court, in its special finding of facts, found the following:

"5. That on December 21st, 1946 the President of the United States by Proclamation No. 2714 proclaimed the formal cessation of hostilities of World War II as between the United States of America and Germany."

Thus we are forced to the conclusion that the ab-

solute ownership of the property held in trust for the appellees Huhn and Puppel under the terms of the Paszotta will vested in them on December 31, 1946, and the court was in error in holding that when the Attorney General issued his vesting order of October 5, 1950, said appellees had nothing that could be seized.

This bring us to a consideration of the court's conclusion that the seizure order of 1950 was illegal because it came after the shooting war had ended and after the cessation of hostilities had been proclaimed by the President and was therefore wholly outside the intent and purpose of the Trading with the Enemy Act. The Supreme Court of the United States seems firmly committed to the proposition that the seizure powers of the Federal Government under the Trading with the Enemy Act are not terminated by the cessation of hostilities. *Commercial Trust Co.* v. *Miller* (1923), 262 U. S. 51; *Schaefer* v. *Miller* (1923), 262 U. S. 760; *Orme* v. *Northern Trust Co.* (1952), 410 Ill. 354, 102 N. E. 2d 335, Certiorari denied, *sub nom von Hardenburg* v. *McGrath* (1952), 343 U. S. 921; *National Savings & Trust Co.* v. *Brownell* (1955), 222 F. 2d 395 (C. A. D. C.), Certiorari denied, 349 U. S. 955.

Nevertheless the powers of the Attorney General to seize property by virtue of the Trading with the Enemy Act should be exercised only if a failure to seize it will result in detriment to the United States, and never if seizing it will result only in injury to an individual owner and be without benefit to the United States. *Keppleman* v. *Keppleman* (1918), (N. J. Ch.), 103 A. 27. See also *Guessefeldt* v. *McGrath* (1952), 342 U. S. 308, 96 L. Ed. 342.

It has been held that the determination of whether or not an alien enemy's property in this country shall

be seized by virtue of the Trading with the Enemy Act lies within the sound discretion of the Attorney General, *Clark* v. *Allen* (1947), 331 U. S. 503, and ordinarily the wisdom of its exercise will not be reviewed by the courts. *Hirabayashi* v. *United States* (1943), 320 U. S. 81. However, we have found no decision specifically holding that the Attorney General can do no wrong in determining such matters and therefore his findings and decisions cannot be reviewed by the courts. The decisions are legion that matters resting in the discretion of the trial court can be reviewed from an abuse in the exercise thereof. We can think of no valid reason why the Attorney General of the United States should be beyond the reach of that universally recognized principle of the law.

Approaching the present question with the conviction that the discretion exercised by the Attorney General can be reviewed, it seems to us that the seizure of an alien enemy's property under circumstances that can be of no substantial benefit to the United States but of great injury to the owners thereof, amounts to confiscation and therefore an abuse of discretion on the part of the officer authorizing the seizure. *Gregg's Estate* (1920), 266 Pa. 189, 109 A. 777.

As far as the present record discloses the value of the property seized was $6,178.68 and as revenue for the payment of claims growing out of World War II, such a sum of money is of negligible importance. That it was not urgently needed nor of any estimable benefit to the United States is indicated by the fact that the war with Germany had been over four years before the Attorney General issued the vesting order in question. It is true that such order recites that seizure is "deemed necessary in the national interests," but surely that bald statement does

not make it so nor does it foreclose a court from reviewing the order for abuse of discretion in its issuance. We find absolutely nothing in this record justifying the Attorney General's assertion that the seizure of $6,178.68 belonging to the appellees Huhn and Puppel, and to them a considerable amount, no doubt, is "necessary in the national interests." Such finding was apparently made in *ex parte* proceedings and it seems to us that when private property is seized without compensation to the owner, between the time of the actual cessation of hostilities and when Congress, by joint resolution, formally proclaims the end of the war the record should show some justification for the action aside from the self-serving declaration of the seizing officer.

We recognize and affirm the general discretionary power of the Attorney General to seize the property of alien enemies after the termination of hostilities, but we can find no necessity for such action in the present case and the exercise of the power, under the circumstances disclosed by the record before us, was an abuse of the discretion vested in the Attorney General.

Judgment affirmed.

NOTE.—Reported in 149 N. E. 2d 214.