[L. A. No. 24527.   In Bank.   Oct. 24, 1958.]

SECURITY-FIRST NATIONAL BANK OF LOS ANGELES (a National Banking Association), as Trustee, etc., Plaintiff and Respondent, v. WILLIAM P. ROGERS, as Attorney General of the United States, etc., Appellant; MARGARET MANN et al., Defendants and Respondents.

26

Dallas S. Townsend, Assistant Attorney General (United States), Director, Office of Alien Property, Laughlin E. Waters, United States Attorney, Arline Martin, Assistant United States Attorney, Mary Eschweiler, Attorney, Office of Alien Property, George B. Searls, Irwin A. Seibel, Paul J. Spielberg, Marbeth A. Miller, Attorneys, Department of Justice, for Appellant.

Brady, Nossaman & Walker, Walter L. Nossaman and Charles M. Walker for Plaintiff and Respondent.

Leonard B. Hirsch, Sollo, Graham & Califf, Morris D. Coppersmith, Hirsch & Rosenblatt, Robert L. Moore, Charles E. Burch, Jr., Fleming, Robbins & Tinsman, Blase A. Bonpane, C. O. Heffernan, Ernest C. Griffith, Oscar W. Fehsel, Elmore A. Gripp, H. A. Gebhardt and Morris Lavine for Defendants and Respondents.

GIBSON, C. J.—Security-First National Bank, as trustee of an *inter vivos* trust, instituted an action for declaratory and other relief relating to construction of the trust instrument, administration of the trust, and distribution of income and corpus. The problems involved on this appeal arise solely from the attempted seizure by the Attorney General of the United States, as successor to the Alien Property Custodian, of the interests of certain beneficiaries of the trust and their successors in interest who were residents of Germany. The Attorney General appeals from the parts of the judgment which disposed of these problems adversely to his contentions.

The facts are undisputed. The trust was created in the year 1922 by J. M. Brockman, who reserved a life estate in the trust property and made the following provisions relevant to this appeal. Paragraph 9 provides that after the death of the trustor the Robinson and Brockman buildings in Los Angeles, which the trustee carries on its books at $5,056,540 and $2,176,000 respectively, will be retained in trust to pay the income to 24 named nieces and nephews of the trustor and to the issue and widows of those of them who die, until

the death of the last survivor of the 24 named beneficiaries, at which time the two buildings will be distributed to the issue of these beneficiaries. Under paragraph 11 the beneficiaries mentioned in paragraph 9 will, in addition, receive distribution of the corpus of a separate trust fund, created by the instrument in the amount of $200,000, at the death without issue of Mrs. Margaret Thompson, who is to receive the income during her life. Paragraph 13 contains a spendthrift provision and provides as "an express term and condition" of the trust and as "a limitation upon the right, title, interest, estate, income or moneys payable to each and every beneficiary" that his interest shall be payable exclusively to him personally, solely and individually, and the personal receipt therefor from the beneficiary is made a condition precedent to the payment or delivery by the trustee.[1] Paragraph 16 provides that if the trustee shall be "unable, for any reason whatsoever, to pay" any portion of the income or principal to a beneficiary "in accordance with all the express terms of this trust" the trustee shall forthwith convey or deliver such part to the beneficiaries designated in paragraph 9, anything to the contrary in the trust notwithstanding.[2]

The trustor died in 1925. Of the 24 beneficiaries named in paragraph 9, the five who were citizens and residents of Germany are all deceased. Three of them left issue now

[1]Paragraph 13 of the declaration of trust reads: "It is an express term and condition of this trust, and a limitation upon the right, title, interest, estate, income or moneys payable to each and every beneficiary hereunder that such rights, titles, interests, estates and incomes of each and every beneficiary shall not be subject to assignment, pledge, mortgage, hypothecation, attachment, execution, judgment, anticipation or other disposition or impairment, nor shall the same pass to or be paid to any receiver, trustee or officer in bankruptcy, or appointed by any court or otherwise, but same shall be payable, transferable and deliverable solely, only and exclusively to each and every beneficiary hereinabove specifically designated and named, according to the terms of this trust, personally, solely and individually, and the personal receipt therefor from the herein designated beneficiaries entitled to the same shall be a condition precedent to the payment or delivery thereof by said Trustee."

[2]Paragraph 16 of the declaration of trust reads: "If and in the event that this trust shall, for any reason, or at any time prior to its final termination fail, in whole or in part; or said Trustee shall be unable, for any reason whatsoever, to pay any portion of the net income and/or the trust estate, in accordance with the terms hereof, and to the beneficiaries hereinabove designated and entitled to receive the same, the Trustee shall, at the time of the failing of this trust, in whole or in part, or its inability to pay the income and/or principal, in whole or in part, to the beneficiaries designated herein and entitled to receive the

living as citizens and residents of Germany. Seven of the American beneficiaries named in paragraph 9 and Mrs. Margaret Thompson are also still alive. The latter has no issue.

From April 3, 1940, interrupted communications due to war conditions prevented the continuation of payment of trust income to the German beneficiaries, and since that date the trustee has impounded their portions. On June 14, 1941, by the provisions of Executive Order 8389 as amended (see note following § 95a of 12 U.S.C.A.), it became unlawful for the trustee to distribute such income to them; their funds in the United States were "blocked." When on December 11, 1941, the United States declared war on Germany, the Trading With the Enemy Act (50 U.S.C.A. App. § 1 et seq.) became operative to permit seizure of enemy property. In 1949 and 1952 the Attorney General, under the authority of that act, executed Vesting Orders Nos. 13539 and 19000 respectively, by which he vested in himself for the benefit of the United States "all right, title, interest and claim of any kind or character whatsoever" of the German beneficiaries "in and to and arising out of or under" the Brockman trust. On June 24, 1953, General License Number 101 was issued, releasing property previously blocked under Executive Order No. 8389 but providing that the license would not affect property which had been vested by the Attorney General. (8 C.F.R. (1958), § 511.101.)

The judgment, insofar as pertinent here, declares that the funds impounded prior to June 24, 1953, were distributable to the beneficiaries designated in paragraph 9 other than the German beneficiaries and that the income and corpus impounded or becoming distributable on or after June 24, 1953, should be paid to the beneficiaries, including the Germans, according to the trust instrument.

The language of paragraphs 13 and 16 of the trust instrument leaves no doubt that the trustor intended that they be treated as a unit, and, when so treated, they clearly provide, by means of a gift over to the beneficiaries designated in paragraph 9, for the termination of any interest in the trust or its income which a beneficiary, because of a disability

---

same, in accordance with all the express terms of this trust, forthwith convey, transfer and deliver such part of the income and/or trust estate so failing, to the beneficiaries and in accordance with all the provisions hereinabove specifically named, set forth and expressed in Paragraph IX of this Declaration of Trust, anything to the contrary in this trust notwithstanding.''

like the one involved here, cannot personally receive at the time the property becomes distributable. It is also clear that the trustor intended that those beneficiaries whose interests are terminated by the operation of paragraphs 13 and 16 would not be entitled to take under the reference in the gift over provision to the persons designated in paragraph 9.

Obviously the requirement of paragraph 13 that payment must be made to each beneficiary ''personally, solely and individually'' would not be satisfied by a payment to the Attorney General under the vesting orders. Since the vesting orders prevented payment to the German beneficiaries in the manner required by paragraph 13, the gift over provisions contained in paragraph 16 became operative and the rights of the German beneficiaries were terminated. The Attorney General could not acquire as a result of the vesting orders greater rights or interests than those held by the aliens (*Estate of Knutzen*, 31 Cal.2d 573, 578 [191 P.2d 747]), and when their rights were terminated nothing remained which the Attorney General could obtain. Insofar as concerns the acquisition of the German interests by the government, the vesting orders, which terminated them, were self-destructive.

It is true that paragraph 13 is what is commonly called a spendthrift provision, and it has been held that such a provision, standing alone, will not prevent a vesting order from reaching the interests of beneficiaries of a trust. (*Estate of Zuber*, 146 Cal.App.2d 584, 596 [304 P.2d 247]; see 2 Scott on Trusts (2d ed. 1956), § 157.4, pp. 1123-1124.) However, our determination that the Attorney General cannot obtain anything from the trust is not based on paragraph 13 alone but, as we have seen, upon the gift over provision contained in paragraph 16 read in conjunction with paragraph 13.

It may be noted that the trust was created in 1922, a few years after the first world war, during which the property of enemy aliens had been seized by the United States Government, and at a time when the collapse of the German currency created a danger of seizure by the German government of the foreign assets of German residents. The trustor, in drafting paragraphs 13 and 16, may thus have had in mind the purpose of avoiding seizure of the interests of the German beneficiaries. In any event, the provisions are clearly applicable to the vesting orders and prevent the obtaining of any part of the income or corpus by the Attorney General.

A similar conclusion was reached in the only two cases which present comparable facts. In *Estate of Thramm,* 80 Cal.App.2d 756 [183 P.2d 97], the testatrix had made bequests to American and German nationals and provided that if it were impossible to settle her estate "with Germany" a year after her death, everything should go to certain American relatives. The Alien Property Custodian issued a vesting order with respect to the interests of the German legatees. The court held that it was the intention of the testatrix that if her German relatives could not actually receive the bequests made to them, her relatives in the United States, and not some governmental agency, should take the bequests and that the American relatives and not the Alien Property Custodian were entitled to the property. In *Harvard Trust Co.* v. *Attorney General,* 329 Mass. 79 [106 N.E.2d 269], in which a testamentary trust contained a gift over to "my then heirs-at-law" operative upon the trustee's inability "to distribute as hereinbefore provided," it was held, even in the absence of a provision requiring payment to the beneficiaries personally, that payment to the Attorney General would not fulfill the intention of the testatrix and that the vesting order caused the gift over to become effective.

The cases of *Estate of Neumeister,* 146 Cal.App.2d 290 [304 P.2d 67], and *Estate of Zuber,* 146 Cal.App.2d 584 [304 P.2d 247], on which the Attorney General relies, are not contrary to our conclusion. These cases, applying the rule stated in *Sinclair* v. *Crabtree,* 211 Cal. 524, 528, 531 [296 P. 79], that contingent future interests are property interests capable of transfer and inheritance, recognized the right of the Attorney General to certain contingent future interests of enemy aliens as to which he had issued vesting orders. Although in the present case the German beneficiaries acquired contingent future interests in the income and corpus of the trust at the time the trust was created, these interests, as we have seen, were terminated as a result of the gift over provision, and the cases cited by the Attorney General are distinguishable because they did not involve such provisions.

The basis of the distinction is clearly shown in the recent case of *Kammholz* v. *Allen,* 155 F.Supp. 511, 515-516, where the court stated that it would be against public policy to sanction the circumvention of the intent of Congress by deferring the payment to enemy aliens until such payments once again become legal, but that it is clearly not against public policy to avoid confiscation by providing that, if a gift

to an alien fails, a gift over is made to an alternate legatee who is not barred from taking by virtue of the Trading With the Enemy Act. *Estate of Neumeister*, 146 Cal.App.2d 290 [304 P.2d 67], and *Estate of Zuber*, 146 Cal.App.2d 584 [304 P.2d 247], come within the first part of this statement because the instruments involved in those cases did not contain any provision for absolute termination of the interests of incapacitated beneficiaries but instead provided for the preservation of the interest of such beneficiaries until the incapacity be removed. On the other hand, the instruments involved in *Estate of Thramm*, 80 Cal.App.2d 756 [183 P.2d 97], *Harvard Trust Co.* v. *Attorney General*, 329 Mass. 79 [106 N.E.2d 269], and the present case, contain termination and gift over provisions of the type declared to be valid in the second part of the statement in the Kammholz case.

We find no merit in the contention of the Attorney General that, even if the construction of the trust instrument which denies him any right to enjoyment of the income and principal of the trust were correct, the vesting orders nevertheless would entitle him to the property interests of the German beneficiaries as distinguished from the enjoyment of the property. When the interest of a beneficiary of a trust is devoid of any possibility of present or future enjoyment, it lacks all substantiality and cannot be recognized.

Our determination that the rights of the German beneficiaries were brought to an end by the vesting orders leads to the conclusion that the American beneficiaries were entitled to the entire beneficial interest in the trust, but the Americans have not appealed, and the judgment is final as to them.

Although the Attorney General has no right to any part of the income or corpus of the trust and no appeal has been taken by the persons whose pecuniary interests have been adversely affected by the judgment, the Attorney General nevertheless contends that he has been injured by it, giving him the right to appeal, on the theory that he is entitled to appear in the public interest to prevent the German beneficiaries from taking anything.

In our opinion the public did not have an interest in withholding property from the German beneficiaries after June 24, 1953, the date from which the trial court ordered that payments and distributions to the German beneficiaries be resumed. On October 19, 1951, a joint resolution of Congress (65 Stats. 451) terminated the state of war between

the United States and the government of Germany, and it provided that German property which had been vested, or which, before January 1, 1947, was subject to vesting, would retain its prior status in that respect. By implication it terminated the power of the Attorney General to vest property which was not subject to vesting prior to that date. On June 24, 1953, as we have seen, General License No. 101 was issued releasing property previously blocked under Executive Order No. 8389 but providing that the License would not affect property which had been vested by the Attorney General and making certain other exceptions not pertinent here.[3] (8 C.F.R. (1958), § 511.101.)

The obvious conclusion is that, subject to the exceptions referred to above, the joint resolution and the General License brought to an end the public policy of preventing former enemies from holding assets in the United States. This is in accord with the following statement of President Truman in a letter dated July 9, 1951 (97 Cong. Rec. 7762), asking that Congress terminate the state of war with Germany: ''This action . . . will . . . create a firmer foundation for the developing structure of peaceful and friendly relationships *and will remove disabilities to which German nationals are subject. . . .''* [Italics added.]

The public interest thus will not be affected by any transfers of property to the German beneficiaries *subsequent* to the effective date of the General License. It was not until after that date that the German beneficiaries were given interests in the trust by the judgment of the trial court, and the judgment provides that only such property as has or will become available for distribution on or after that date will be dis-

---

[3]The reservations in the joint resolution and the General License with respect to property which had already been vested were made for the sole purpose of having the vested property available for the payment of war claims. (War Claims Act, 50 U.S.C.A. App., §§ 2001-2013; see letter of President Truman, dated July 9, 1951, 97 Cong. Rec. 7762, asking that Congress terminate the state of war with Germany and, among other things, retain federal control of vested property for the purpose of paying war claims.) Since, as we have seen, the Attorney General cannot obtain any of the trust property, and since, therefore, the property will not be available for the payment of war claims, the reservations contained in the joint resolution and the General License have no bearing upon this case.

Another exception in the General License is that it does not apply to any property blocked by reason of the interest of any individual or organization ''which on December 31, 1946, was in any of the areas of Germany under control or administration of the Union of Soviet Socialist Republics . . .,'' but the parties have agreed that all the German beneficiaries of the trust were in the Western Zone of Germany at that date.

tributed to the Germans. The public, therefore, has no interest in preventing the distributions to the German beneficiaries which are directed by the judgment, and the Attorney General cannot properly be regarded as having been injured by the distributions in which, as we have seen, he has no pecuniary interest.

The judgment is affirmed.

Shenk, J., Carter, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.