IN THE MATTER OF THE TESTAMENTARY TRUST OF PASZOTTA, ETC. *v.* CALUMET NATIONAL BANK OF HAMMOND ETC. ET AL.

[No. 18,897. Filed March 10, 1961. Concurring opinion filed March 22, 1961. Rehearing denied April 14, 1961.]

*Dallas S. Townsend,* Asst. Attorney General, Director Office of Alien Property, *Phil M. McNagny, Jr.,* U. S. Attorney, Northern District of Indiana, *Edmund A. Schroer, Kenneth C. Raub,* Asst. U. S. Attorneys, of Hammond, *Irving Jaffe, Max Wilfond, James D. Hill, George B. Searls,* and *Irwin A. Seibel,* Attorneys, Dept. of Justice, Washington, D. C., for the Attorney General of the United States.

*Edwin Friedrich, Charles Levin* and *Virginia Lanahan,* of counsel, all of Hammond, for appellees.

KELLEY, J.—This appeal was previously considered by us as shown by *In Re Testamentary Trust of Paszotta et al.* v. *Calumet National Bank of Hammond, Trustee et al.* (1958), 128 Ind. App. 628, 149 N. E. 2d 214. Therein the material facts are incorporated. The case is now before us again pursuant to the reversal and remand thereof by the Supreme Court of the United States. See *Rogers, etc.,* v. *Calumet National Bank of Hammond, etc.* (1959), 358 U. S. 331, 3 L. Ed. 2d 344, 79 S. Ct. 350. To the end of clarity, some of the pertinent facts will be now again briefly referred to.

Herbert M. Paszotta died testate on November 11, 1943. By his will he bequeathed his property to Mrs. Helen Fisher IN TRUST for the sole benefit of his sisters, Klara Huhn and Wanda Puppel, the appellee-intervenors herein. The named trustee has since deceased and the appellee, Calumet National Bank of Hammond, is the substituted trustee of said trust.

At the time of decedent's death, his said sisters, the named cestuis que trustent, were residents of Germany. On October 5, 1950 the Attorney General of the United

States, pursuant to the powers and authorities granted to him on October 14, 1946, as successor to the Alien Property Custodian, filed a vesting order 15163 under the provisions of the Trading with the Enemy Act, as amended, 40 Stat. 411, as amended, 50 U. S. C. App. §5(b) and 7(c). Thereupon the trustee, by petition, sought instructions of the Lake Superior Court, Room No. 1, as to whom the trust funds should be distributed. That court determined and ordered that the trust assets be distributed to the said sisters of decedent named as cestuis in his said will.

The Attorney General appealed said determination to this court and we affirmed the same, *In Re Trust of Paszotta* v. *Calumet National Bank, supra,* on the sole ground that in our opinion the said Attorney General, in attempting to seize the property of the said beneficiaries of said testamentary trust, had abused the discretion vested in him. His petition for a rehearing was denied as was his petition for transfer to the Supreme Court of Indiana. Thereupon, the said Attorney General petitioned for certiorari to the Supreme Court of the United States. On January 26, 1959 the Supreme Court of the United States granted certiorari on the ground that we were without power to review the exercised discretion of the Attorney General. However, the Supreme Court, in addition to reversing our judgment on the ground aforesaid, remanded the case to us with this significant statement:

". . . On remand the Indiana courts are of course free to consider other questions *presented by this record* in light of General License 94, 12 Fed. Reg. 1457, as it may have affected the definition of "national" in Executive Order 9095, 7 Fed. Reg. 1971, as amended, and Executive Order 8389, 5 Fed. Reg. 1400. See GMO. Niehaus & Co. v. United States, 139 Ct. Cl. 605, 153 F. Supp. 428."

In its decision of reversal and remand of this cause, the Supreme Court of the United States made no reference to the dicta in our previous opinion that the trust estate vested in the appellees, Klara Huhn and Wanda Puppel, on December 31, 1946. It is now our considered opinion that the trust estate could not, under any circumstances, vest in said beneficiary appellees while the same was subject to seizure by the government of the United States through the office of the Attorney General in his capacity as successor to the Alien Property Custodian.

The portion of decedent's will pertinent to our present inquiry reads as follows:

"Third: I hereby give, bequeath, and devise, absolutely and forever, all the rest, residue and remainder of my property real, personal or of whatever nature and wherever situated of which I may die possessed or of which I may have the power of disposition, to the aforesaid Mrs. Helen Fisher, but IN TRUST nevertheless for the following trust purposes:

"a. To receive, hold and administer all of my said estate and property *for the sole benefit* of KLARA HUHN and WANDA PUPPEL both of Berlin, Germany, during the natural lives of said Klara Huhn and Wanda Puppel or until the termination of hostilities now in existence between the United States of America and the Nation of Germany, if said termination of hostilities occur before the deaths of Klara Huhn and Wanda Puppel.

"b. To manage and conduct the affairs relating to said property so that during the continuation of the aforesaid state of hostilities any and all proceeds resulting from the conduct of the property are held in safekeeping *for the benefit of the aforesaid Klara Huhn and Wanda Puppel.*

"c. To pay over, convey, and transfer absolutely in fee simple to Klara Huhn and Wanda Puppel, the entire principal of this trust upon the cessation of the aforesaid state of hostilities and then there

to terminate the trust herein imposed, and *should the deaths of Klara Huhn and Wanda Puppel occur before the aforesaid cessation of hostilities and before the resumption of normal commerecial and political relations between the United States of America and the Nation of Germany, then I direct that this trust is to cease and terminate,* and the principal and all accumulated proceeds conveyed, transferred or paid over to said Helen Fisher, absolutely and in fee simple." (Emphasis supplied).

It is now not only our right, but duty, to examine and consider all questions properly presented originally in this cause as well as those presently appearing.

The record shows that said testator made the will on April 19, 1943 while he was then in the military service of the United States at Aberdeen Proving Ground, Aberdeen, Maryland. He died November 11, 1943 while in the military service.

The quoted portion of decedent's will, and the record herein, indicate very clearly that he was familiar with the law and governmental regulations concerning financial transactions between citizens of this country and Nationals of a nation with whom we were at war. The language used in the will, as shown by the aforesaid quoted portion thereof, demonstrates in clear and unambiguous terms that it was the positive intention of the testator that the trust estate and property and the right thereto should not vest in the named beneficiaries until they could legally receive it for their own personal use and benefit. It follows that under the provisions of this will the property could not vest in the designated appellee beneficiaries so long as the Attorney General had or possessed any right or authority to assert or claim that said property had vested for the benefit of the United States.

The court, in *GMO. Niehaus & Co.* v. *United States* (1957), 153 F. Supp. 428 (Ct. Cl.), to which the Supreme Court of the United States directed our attention, centered its holding that the propery therein involved was not subject to vesting by the Attorney General, upon a letter addressed by the President to the Vice President on July 9, 1951. In that letter the President requested the Vice President to lay before Congress a Joint Resolution to terminate the state of war existing between the United States and Germany. The President, referring therein to seizures under the Trading with the Enemy Act, said:

"... The vesting of German property under this program ... is limited to *German property and rights* located here *before or during* the period of hostilities."

It is important to note that on the same day (January 26, 1959) that the Supreme Court of the United States granted certiorari and rendered its opinion of remand of the instant case to this court, containing therein the reference to the aforesaid Niehaus case, that court also granted certiorari in *Hermann* v. *Rogers* (1959), 358 U. S. 332, 3 L. Ed. 2d 345, 79 S. Ct. 353, and vacated the judgment of the Court of Appeals of the 9th Circuit (*Hermann* v. *Rogers,* 1958, U. S. C. A. 9th, 256 Fed. Rep. 2d 871), and said:

"Petition for writ of certiorari is granted. The judgment of the Court of Appeals is vacated and the cause is remanded to it, *to consider whether, under the law of property of Idaho, it was possible, after the time of the making of the conveyance, for any person other than the named beneficiaries of the trust to acquire a property interest in it* (other than through a named beneficiary), and, in the light of its determination as to this, to reconsider its holding that respondent was entitled to

all the trust funds remaining in the hands of this trustee." (Emphasis supplied).

The said case of *Hermann* v. *Rogers,* as it was decided originally by the Circuit Court of Appeals of the 9th Circuit, 256 Fed. Rep. 2d 871, was heavily relied upon by the appellant herein in his quest for a transfer to the Supreme Court of Indiana of our previous holding in this case. As noted above, said Hermann case relied upon by appellant was afterward vacated and remanded with instructions, and, therefore, no longer supports the appellant's position.

The above suggested importance of the referred to two holdings of the United States Supreme Court on the same day, lies in the obvious indication of the reluctance of that court to approve the seizures made by the appellant under the existing conditions and circumstances, and its implied favorable regard of the property rights of those affected by such seizure. If such was not the attitude and leaning of that court, then its admonition was fruitless and needless. We are not inclined to ascribe such idleness to that important and busy Tribunal.

It is a long established legal principle in this state that in construing a will the governing factor is the intention of the testator as expressed and shown by the language thereof, and the primary purpose of such construction is to ascertain and give effect to such intention, so long as the same may not interfere with the established rules of law. In *Hutchinson's Estate et al.* v. *Arnt, Administratrix et al.* (1936), 210 Ind. 509, on page 518, 1 N. E. 2d 585, p. 588, the rule is expressed in this wise:

"But the purpose in construing a will is to ascertain and give effect to the intention of the testator,

so long as the same may not interfere with the established rules of law. This purpose is to be ascertained upon a consideration of the will in its entirety, and words and expressions in the will are to be liberally construed and interpreted to this end. . . . The object is to discover the testator's intention from all the language of the will. The meaning which the testator intended to convey, by the use of particular words and expressions, will be determined from their relationship to other words and expressions used, and, when his intention is discovered, it will be enforced, notwithstanding that a meaning broader or narrower than is usual be given to particular words and phrases."

See, also, *Curry et al.* v. *Curry et al.* (1914), 58 Ind. App. 567, 576, 105 N. E. 951, "The intent of the testator is recognized by all the authorities as being the polar star to which the courts must always look in construing a will"; *Reeder et al.* v. *Antrim* (1915), 64 Ind. App. 83, 91, 110 N. E. 568; *Mundhenk* v. *Bierie et al.* (1922), 81 Ind. App. 85, 89, 135 N. E. 493. Effect must be given to the manifest intent of the testator as deduced from the language of the will "read *in the light of the circumstances surrounding him (the testator) at the time of its execution.*" (Emphasis and bracketed words supplied), *Billings* v. *Deputy et al.* (1925), 85 Ind. App. 248, 252, 146 N. E. 219; *Beck et al.* v. *Dickinson, Executor* (1934), 99 Ind. App. 463, 467, 468, 192 N. E. 899.

The court, in the GMO. Niehaus case, *supra,* held that Congress had delegated to the President "the power to determine when and on what terms alien property should be seized" and that it was not willing to hold the plaintiffs' property subject to lawful vesting "in the face of the statement of the President of the United States", to whom said power was delegated by Congress, that such property was not so subject. There-

fore, we are justified in looking to the President's said statement to ascertain what alien property was subject to seizure.

The said statement declared that the vesting of German property is limited to "German property and rights located here" before or during "the period of hostilities." Now, the clearly expressed intention of the testator of the will here involved was that no seizable property or property right could exist in his sisters, the appellees, Klara Huhn and Wanda Puppel, until all the conditions giving the power of the seizure to the appellant had been removed. Until that moment, there existed or vested in said appellees no "German property" or "rights" of any kind in or to the trust property. Until the conditions authorizing seizure by the appellant were removed, the appellees under said will possessed no property, property right or contingent or expectant right or interest in or to the trust property. On December 31, 1946 the "period of hostilities" came to an end and with it the authority of the appellant to seize the property also came to an end.

As in the case of *Security-First National Bank of Los Angeles* v. *William P. Rogers, etc.* (1958), 51 Cal. 2d 24, 330 P. 2d 811, the instant will sufficiently provides for disposition of the trust estate to an alternate not barred from taking under the Trading with the Enemy Act in event of inability of the first named beneficiaries to take. Therefore, the will here involved cannot be said to be against public policy.

The last above mentioned case, in referring to the holding in *In Re Estate of Thramm* (1947), 80 Cal. App. 2d 756, 183 P. 2d 97, said, apropos here:

"The court held that *it was the intention* of the testatrix that if her German relatives could not ac-

.tually receive the bequests made to them, her relatives in the United States, and not some governmental agency, should take the bequests and that the American relatives and not the Alien Property Custodian were entitled to the property. (Emphasis supplied).

The court also stated, consonant with what we have already observed, that:

"It may be noted that the trust was created in 1922, a few years after the first world war, during which the property of enemy aliens had been seized by the United States Government, . . . . The trustor, in drafting paragraphs 13 and 16, *may thus have had in mind the purpose of avoiding seizure of the interests of the German beneficiaries. In any event, the provisions are clearly applicable to the vesting orders and prevent the obtaining of any part of the income or corpus by the Attorney General.*" (Emphasis supplied).

The time and circumstance under which this will was executed and the particular wording thereof give clear indication of the determined intention of the testator that his sisters should take the trust property if they survived the cessation of hostilities and, if not, that Helen Fisher, an American resident, should take. To say that any kind of property interest was given by said will to said sisters which could be seized by the appellant as successor to the Alien Property Custodian would amount to a construction of the will in absolute frustration of the expressed intention of the testator. Of course, the expressed intention of a testator may be frustrated if for some reason the provisions of the will run afoul of an established pertinent legal principle. However, the present will, having a trust estate of personal property only, must be construed according to the laws of this state; and, in this state, as we have shown above, the intention of the testator as deduced

from the language of the will, read in the light of the circumstances surrounding him at the time of its execution, is the "polar star" to which we must look in the construction thereof.

In holding as we have above indicated, we do not run counter to the rule expressed in *Kammholz, etc.* v. *Allen et al.* (1957), U.S.D. Ct., S.D. New York, 155 F. Supp. 511, that to sanction a testator's circumvention of the congressional intent by deferring payment to alien enemies until such payments once again become legal would be against public policy. The present will provided for the exception stated in said last mentioned case, namely, that it is clearly not against public policy to avoid confiscation by providing for the taking of the property by another named beneficiary who is not barred by the Trading with the Enemy Act where the alien beneficiary becomes unable to take. See *Brownell* v. *Edmunds* (1953), 4 Cir., 209 F. 2d 349; *McGrath* v. *Ward* (1950), D.C. Mass., 91 F. Supp. 636; and *Harvard Trust Co.* v. *Attorney General* (1952), 329 Mass. 79, 106 N. E. 2d 269.

We think that the trial court reached the correct result in this cause.

Judgment affirmed.

Pfaff, PJ., Bierly, J. concur; Gonas, J., concurs with separate statement.

## CONCURRING OPINION

GONAS, J.—After giving to the opinion of the Supreme Court of the United States, the respectful consideration to which it is entitled, I am able to concur in this opinion which follows the reasoning of the Supreme Court in its conclusion upon which it is propounded. *Rogers, etc.* v. *Calumet National Bank of Hammond*

*etc.* (1959), 358 U. S. 331, 3 L. Ed. 2nd 344, 79 S. Ct. 350.

The individual privilege to dispose of property by will is the creature of positive law and is carefully guarded and protected.

There is no question that the decedent had the capacity to dispose of his property in conformity with his ideas of justice and propriety.

It seems clear to me that the Supreme Court of the United States, in this case, clearly indicated their belief and conviction that a proper and just result was reached.

NOTE.—Reported in 172 N. E. 2d 904.